UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MIKEISHA BLACKMAN, et al., ) | |
| Plaintiffs, ) | |
| v. ) | Civil Action No. 97-1629 (PLF) |
| DISTRICT OF COLUMBIA, et al., ) | Claim of Linda and Brenda Gibson, Surrogate parent for educational Purposes of S.J. |
| Defendants. ) | |

OPINION

This matter arises from the failure of the District of Columbia Public Schools ("DCPS") to provide a special education student with a timely due process hearing and decision, and the motion of the student and his guardians *ad litem* for a preliminary injunction requiring DCPS to place the student at a private school providing special education services that they maintain are necessary. For the reasons stated, the Court grants plaintiffs' motion.

I.  BACKGROUND

Plaintiff S.J. is a seven-year-old DCPS student with multiple cognitive and emotional difficulties as well as medical disabilities including neurofibromatosis, hypertension, and scoliosis. He is currently enrolled at Miner Elementary School in the District of Columbia. On February 4, 2005, S.J.'s guardians *ad litem*, Brenda and Linda Gibson, requested by letter that DCPS conduct a due process hearing, as required by the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et. seq.*, to evaluate S.J.'s current Individualized Education Plan ("IEP"). They argued that S.J.'s IEP was inappropriate for several reasons, including its

failure to consider his need for physical or occupational therapy and its inadequate provision of speech and language services. See Report and Recommendations of the Special Master (July 7, 2005) ("R&R") at 2-3. The letter did not ask for a hearing of any specific duration.

Federal IDEA regulations require that a final decision be reached and a copy of the decision mailed to all parties within 45 days of the receipt of a request for a due process hearing. See 34 C.F.R. § 300.511(a). In order to meet the 45 day requirement, District of Columbia regulations require DCPS to convene a hearing within 35 days of a request and to issue a written decision within 10 days of the hearing. See D.C. Mun. Regs. Tit. 5, § 3021.5.[1] In this case, a due process hearing was scheduled for March 16, 2005, 40 days after the initial request. Five days before the hearing date, the parties disclosed their exhibits and witness lists. Plaintiffs identified nine witnesses they wished to present and DCPS identified twelve. See R&R at 4.

The hearing began on March 16, 2005. All present acknowledged that two hours would be insufficient to present all the witnesses identified, and plaintiff's counsel agreed to a continuance of the hearing. The Hearing Officer ("HO") scheduled another hearing for April 25, 2005, 40 days after the first hearing, stating that this was the first full day available for the HO and/or DCPS representative. Plaintiffs' counsel stated that such a long continuance would be

---

[1] The D.C. regulation reads in full:

> A person shall have the right to have the hearing held not later than thirty-five (35) days after the receipt of the request for the hearing. In most cases, the hearing shall not be held in less than twenty (20) days from the receipt of the request for hearing in order to provide an opportunity for the parent or guardian to obtain representation, if desired, and to prepare for the hearing. However, the hearing may be held sooner, upon the request of the parent or guardian.

D.C. Mun. Regs. Tit. 5, § 3021.5.

prejudicial to S.J. On March 16 the HO issued an interim order continuing the hearing "sua sponte" until April 25, stating that "The number of witnesses required more than the 2-hour time slot schedule [sic] by the parents," and that "The 45-day time limit, . . . pursuant 34 C.F.R. § 300.511(a)(1), is waived." Interim Order (March 16, 2005).

On April 25, 2005, an all-day hearing was conducted at which DCPS presented three witnesses and plaintiff put on one. To accommodate additional testimony, the parties agreed to continue the hearing until June 3, 2005, 39 days after the April 25 hearing and 119 days after the initial request, on which date a four-hour hearing was scheduled. This extension was embodied in another Interim Order issued on April 25, 2005. Three days later, the HO issued an Amended Interim Order changing the scheduled date from June 3 to June 8, 2005, without stating any reason for the change. See Interim Order (April 28, 2005). The HO appears not to have consulted the parties before making this change.

A further Interim Order was issued on May 2, 2005, reiterating the schedule change and again stating that the 45-day time limit had been waived. See Interim Order (May 2, 2005). The Interim Order also directed the parties to file a joint status report regarding an independent speech and language evaluation to have been conducted for S.J. DCPS filed no status memorandum; plaintiffs' memorandum, filed May 11, 2005, objected specifically to the repeated continuances of the hearing. See R&R at 8.

On May 31, 2005, more than a month after the June 8 date was set, DCPS filed a request for a continuance on the grounds that the DCPS attorney assigned to S.J.'s case would "be training DCPS personnel at a mandatory training session" on that date. See R&R at 9. DCPS suggested June 10, 13, or 14 as alternative hearing dates. Plaintiffs strenuously objected

to an extension on several grounds. First, they claimed that the prior extension had been necessitated by the HO's decision to allow DCPS at the April 25 hearing to introduce evidence of a new IEP (formulated in April 2005), in violation of the HO's own prior order that the parties' 5-day disclosures were not to be amended. Plaintiffs stated that this "completely shifted the issues to be addressed in the hearing. Thus, an inordinate amount of time was spent arguing and cross-examining witnesses about the improperly submitted IEP." R&R at 9. As a result, plaintiffs were able to present only one witness at the April 25 hearing. Plaintiffs argued that any further continuance would inflict additional harm on S.J., who, plaintiffs argued, "has an inappropriate IEP and is placed in an inappropriate school." Id. Finally, plaintiffs stated that even the brief delay asked for by DCPS was unacceptable because plaintiffs' expert witnesses could not be rescheduled on such short notice.

In an Interim Order issued on June 3, 2005, the HO granted DCPS' request on two grounds: (1) "The reason given by DCPS for the continuance," and (2) "To retain assigned counsel since 9-hours of testimony is completed." Interim Order (June 3, 2005). The HO, however, did not grant the brief continuance requested by DCPS, but rescheduled the hearing for July 11, 2005 – a month after the dates requested by DCPS, 77 days after the prior hearing, and *157 days* after the plaintiffs' initial request for a due process hearing.

On June 15, 2005, plaintiffs filed a motion for preliminary injunction in this Court, asking for S.J.'s placement at Accotink Academy starting July 5, 2005 and for compensatory education from February 1, 2004 until the issuance of an injunction. The motion was referred to Special Master Elise Baach, who issued her Report and Recommendations on July 7, 2005. The Report and Recommendations concluded that plaintiffs were members of the

Blackman subclass and that a preliminary injunction was warranted.[2] The Special Master did not decide whether plaintiffs also were members of the Jones subclass (because of DCPS' alleged failure to implement portions of the HO's Interim Orders), but recommended that the Court direct further briefing on that issue by the parties.

Plaintiffs filed a motion to adopt the Special Master's Report and Recommendations on July 27, 2005. DCPS, after requesting a 4-day extension of time, filed its objections to the Report and Recommendations on July 29, 2005. For the reasons stated below, the Court adopts the Special Master's Report and Recommendations in their entirety and grants plaintiffs' motion for a preliminary injunction.

## II. DISCUSSION

### A. Standards for Preliminary Injunction

Under the familiar standard for deciding whether to grant emergency injunctive relief, the Court must consider (1) whether there is a substantial likelihood that plaintiffs will succeed on the merits of their claims, (2) whether plaintiffs will suffer irreparable injury absent an injunction, (3) the harm to defendants or other interested parties (balance of harms), and (4) whether an injunction would be in the public interest or at least not be adverse to the public

---

[2] The Blackman subclass is defined as:

> All persons now, and in the future, who present complaints to DCPS pursuant to Section 615(b)(6) of the IDEA and whose requests for impartial due process hearings under Section 615(f) of the IDEA and D.C. Mun. Regs. Tit. 5, § 3021.5 are overdue according to these provisions; and their next friends.

Opinion (June 3, 1998) ("Liability Opinion") at 3.

interest. See Serono Laboratories, Inc. v. Shalala, 158 F.3d 1313, 1317-18 (D.C. Cir. 1998); Sea Containers Ltd. v. Stena AB, 890 F.2d 1205, 1208 (D.C.Cir. 1989); Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 843 (D.C.Cir. 1977); Milk Industry Foundation v. Glickman, 949 F. Supp. 882, 888 (D.D.C. 1996).

Plaintiffs are not required to prevail on each of these factors. Rather, under Holiday Tours, the factors must be viewed as a continuum, with more of one factor compensating for less of another. "If the arguments for one factor are particularly strong, an injunction may issue even if the arguments in other areas are rather weak." CityFed Fin. Corp. v. Office of Thrift Supervision, 58 F.3d 738, 747 (D.C. Cir.1995). An injunction may be justified "where there is a particularly strong likelihood of success on the merits even if there is a relatively slight showing of irreparable injury." Id. Conversely, when the other three factors strongly favor interim relief, a court may grant injunctive relief when the moving party has merely made out a "substantial" case on the merits. The necessary level or degree of likelihood of success that must be shown will vary according to the Court's assessment of the other factors. Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc., 559 F.2d at 843-45. In sum, an injunction may be issued "with either a high probability of success and some injury, or vice versa." Cuomo v. United States Nuclear Regulatory Comm'n, 772 F.2d 972, 974 (D.C. Cir. 1985).

The Special Master concluded that plaintiffs were entitled to relief as members of the Blackman subclass, and therefore were guaranteed success on the merits of their case, see R&R at 15, 23-24; that DCPS' failure to provide a timely due process hearing constituted irreparable harm to S.J., see id. at 24-25; that an injunction would not "disturb the ongoing rights of the defendants in that the defendants remain able to change any placement ordered by the

6

Court, provided the change is made in a manner that complies with IDEA," id. at 25; and that "compliance with, and implementation of, Hearing Officer decisions, rendered pursuant to IDEA," is in the public interest. Id.

In opposition to the Special Master's Report and Recommendations, DCPS advances a variety of arguments, most of which focus on shifting responsibility for the long delay in completing S.J.'s due process hearing from DCPS to the plaintiffs. Some of these arguments are directly contradicted by the Court's prior holdings in this case. The Court will deal with them in turn.

*B. Exhaustion*

Inexplicably, DCPS argues that plaintiffs' claim is barred by their failure to exhaust their administrative remedies by seeing the due process hearing through to its conclusion. See Defendants' Objection to Report and Recommendations of the Special Master (July 29, 2005) ("Obj.") at 10 (citing Lemon v. District of Columbia, 920 F. Supp. 8 (D.D.C. 1996)). The Court flatly rejected this argument in its June 3, 1998 Opinion granting summary judgment on the issue of liability in this case.[3] The Court there stated:

---

[3]    In its June 3, 1998 Opinion, the Court specifically addressed Lemon v. District of Columbia, the sole case relied upon by DCPS for its exhaustion argument here. See Liability Opinion at 18-19. The Court in Lemon granted defendants' motion to dismiss for failure to exhaust. See Lemon v. District of Columbia, 920 F. Supp. at 11-12. On appeal, however, DCPS abandoned its exhaustion argument, and the court of appeals remanded the case "in light of the parties' statements they have settled this litigation, that the Office of Special Education Programs has issued a directive paralleling the relief that was sought in this case, and that the District of Columbia Public Schools has reversed its position on the issue of exhaustion of administrative remedies." See Lemon v. District of Columbia, No. 96-7088 (D.C. Cir. August 22, 1997); Liability Opinion at 18-19.

> With respect to the Blackman plaintiffs, whose complaint centers on defendants' failure to provide timely due process hearings, the IDEA does not provide parents with any administrative mechanism to compel DCPS to provide the hearing. In the absence of an administrative mechanism, there simply is no remedy to exhaust and the Blackman plaintiffs are excused from any exhaustion requirement.

See Liability Opinion at 17 (citations omitted). Plaintiffs here are members of the Blackman class and cannot be faulted for failing to exhaust administrative remedies that do not exist.

### C. Irreparable harm

DCPS also argues, again somewhat mysteriously in light of prior holdings in this case, that there is no threat of irreparable harm because S.J. already has an IEP in place, dated April 13, 2005. See Obj. at 15.[4] The Court, however, has held specifically that in the context of this case the failure to provide timely due process hearings itself may constitute irreparable harm:

> Defendants' failure to provide a *timely* due process hearing to plaintiffs is not an unimportant or technical violation of the procedural safeguards provided for in the IDEA. Rather, it is the denial of a fundamental component of the due process protections afforded by the statute. . . . [T]he Court concludes that DCPS's failure to provide timely due process hearings and determinations can itself constitute the denial of a free appropriate education. While a slight delay in the provision of a hearing after a request has been made or a slight delay in rendering a decision may be an excusable procedural infirmity in some cases, the failure to offer the parents and their children a timely hearing for months after the expiration of the 45-day period, as was the case here, crosses the line from process to substance.

See Blackman v. District of Columbia, 277 F. Supp.2d 71, 78-79 (D.D.C. 2003) (citations omitted) (emphasis in original).

---

[4] That IEP was completed after plaintiffs had filed their request for a due process hearing.

In this case, the delay was by no means "slight"; plaintiffs filed their motion for preliminary injunction 121 days after first requesting a due process hearing. Had plaintiffs continued with the due process hearing procedure on the established time frame, the earliest conceivable date for a decision to issue would have been July 12, 2005 – 158 days after their initial request, and more than three times as long as the maximum allowable time. Such a delay unquestionably constitutes denial of S.J.'s right to a Free Appropriate Public Education ("FAPE") and therefore irreparable harm.

### D. Legitimacy of the Delay

Much of DCPS' opposition to the Special Master's Report and Recommendations focuses on shifting blame for the large delay in this case to plaintiffs, and casting the Report and Recommendation as an attempt to "place[] the total burden and onus on DCPS, the HO, and/or SHO [Student Hearing Office] for all delays in this case and requir[ing] nothing of plaintiffs' counsel." Obj. at 13. This is an unfair and implausible characterization of the Special Master's findings.

DCPS attributes great significance to the fact that when plaintiffs initially requested a due process hearing, their counsel did not request any more than the two hours usually afforded to such hearings. See Obj. at 4 ("As a result of plaintiffs' failure to request an appropriate amount of time the hearing could not be completed and another date for a hearing needed to be scheduled."). The Special Master, however, specifically noted that a continuance for such a reason might be legitimate: "there is no question that continuances of proceedings may legitimately extend the 45-day window in which a student is entitled to receive a decision from a

hearing officer. Indeed, the federal regulations implementing IDEA permit consideration of continuances 'at the request of either party.'" R&R at 15-16 (quoting 34 C.F.R. § 300.511 9(c)). The Court agrees, and has no difficulty finding that an initial continuance to allow additional testimony and argument was appropriate. To argue, however, that because plaintiffs failed to request additional time for the first hearing they cannot complain of any future delays, however unreasonable, is simply absurd. At most, a single continuance would have been warranted on this basis.

As to the further delays occasioned (at least in part) by the number of witnesses presented, the Court first notes that this is as much the responsibility of DCPS (who wished to present twelve witnesses) as of plaintiffs (who wished to present nine). Moreover, although the Court is not intimately familiar with the mechanics of due process hearings, it is astonished by the fact that, when it was disclosed that the parties intended to present the testimony of *twenty-one witnesses* at the due process hearing, the HO scheduled only a single further day of testimony. Had it occurred to the parties in March, when it became clear that significant additional time would be required, to schedule more than a single additional day of testimony, this controversy might have been avoided. Simply put, the burden is on the Student Hearing Office to provide sufficient hearing officers or sufficient time to assure that the statutory responsibilities of DCPS are met.

The final extension requested by DCPS, from June 8 until the following week, is frankly mystifying. The request was filed on May 31, more than a month after the date was set and only a week before the scheduled hearing. Counsel for DCPS identified a "mandatory training session" as the source of the delay; however, after eight years of litigation in this case,

DCPS should well understand that its obligation to hold timely due process hearings is mandatory, as well, regardless of the other obligations of any particular DCPS lawyer.[5]

DCPS also argues that, contrary to the Special Master's findings, plaintiffs' counsel agreed to the further extensions of time. See Obj. at 12-13, This argument, however, fails to distinguish between *acquiescence* to a continuance already granted by the HO (and agreement on a date for a later hearing) and *consent* to one. Once the judicial officer has determined that an extension will be granted, an attorney has little choice but to agree upon a date. At the March 16, 2005 hearing plaintiffs' counsel objected to the length of the first extension (until April 25). See R&R at 4 (citing Transcript of March 16, 2005 Due Process Hearing). On May 11, plaintiffs objected in writing to the repeated continuances of the due process hearing. In response to DCPS' May 31 request for a continuance, plaintiffs again objected in writing. These explicit objections leave no room to argue that plaintiffs agreed, explicitly or implicitly, to such a protracted extension of the hearing process.[6]

In short, although the first continuance of the hearing was likely necessitated by plaintiffs' counsel's failure to request a longer hearing at the outset, responsibility for DCPS' failure to provide a timely due process hearing and decision after that first extension falls squarely upon DCPS' counsel and/or the HO.

---

[5] There also was no question that plaintiffs had arranged for expert witnesses to testify at the June 8 hearing; it is hard to believe that DCPS could not anticipate the logistical problems that a schedule change on such short notice could cause.

[6] Even if only plaintiffs' written objections are to be credited, the last date chosen by the HO for continuation of the due process hearing – July 11, 2005 – was 61 days after the first of these.

*E. Continuances under the IDEA and Regulations*

The Special Master in her Report and Recommendations also expressed concern about the *length* of the continuances granted in this case, stating that "the continuances here are of such length as to render the 45-day limit in IDEA virtually meaningless." R&R at 15. The Court agrees. The initial hearing was scheduled for 40 days after plaintiffs' request. The first extension was for 40 days; the second was for 39 and then (after the HO's *sua sponte* amendment) 44 days; and the last extension, from June 8 until July 11, was for 33 days.

One could easily conclude from this array of dates that in scheduling these extensions the HO sought symbolically to remain within the letter of the 45-day limit established by Federal IDEA regulations, while in reality abandoning any pretense of delivering a timely hearing or decision in keeping with the purposes of the statute; and that counsel for DCPS acquiesced to this course of action. Although the HO is authorized to grant "specific extensions of time" beyond the 45-day deadline set forth in the IDEA regulations, 34 C.F.R. § 300.511(c), the repeated continuances imposed in this case deviated so severely from the established time frame that they hardly can be called "specific."

Even the scheduling of the initial due process hearing violated District of Columbia regulations requiring that a hearing be convened within 35 days of receipt of a request. See D.C. Mun. Regs. Tit. 5, § 3021.5. Finally, to the extent the HO granted continuances *sua sponte* (this is obviously the case with the June 3 to June 8 extension and the extension until July 11, which went far beyond either parties' request) he violated IDEA regulations, which allow extensions only "at the request of either party." See 34 C.F.R. § 300.511(c); R&R at 16-17.

III.  CONCLUSION

Plaintiffs are members of the Blackman class because their request for a due process hearing and decision is overdue.  Consequently, they have demonstrated success on the merits of their claims.  The delay in this case furthermore has caused irreparable harm to plaintiffs by denying S.J. the Free Appropriate Public Education to which he is entitled.  For the reasons stated by the Special Master in her Report and Recommendations, the Court also finds that granting plaintiffs' request for injunction would not harm defendants, and that granting the motion for preliminary injunction and enforcing the procedural requirements of the IDEA is in the public interest.  The Court therefore adopts the Report and Recommendations of the Special Master in their entirety and grants plaintiffs' motion for preliminary injunction.

An Order consistent with this Opinion will issue this same day.

/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE: August 10, 2005