UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

MIKEISHA BLACKMAN, et al.,          )
                                    )
            Plaintiffs,             )
                                    )
      v.                            )      Civil Action No. 97-1629 (PLF)
                                    )
DISTRICT OF COLUMBIA, et al.,       )
                                    )
            Defendants.             )
_____)
                                    )
JAMES JONES, et al.,                )
                                    )
            Plaintiffs,             )
                                    )
      v.                            )      Civil Action No. 97-2402 (PLF)
                                    )
DISTRICT OF COLUMBIA, et al.,       )
                                    )
            Defendants.             )
_____)

MEMORANDUM OPINION AND ORDER

On March 9 and 10, 2006, the Court conducted a Fairness Hearing to consider whether the proposed Consent Decree preliminarily approved by the Court on December 20, 2005, is fair, reasonable, and adequate. At the Fairness Hearing, the mediators discussed the significance of the Consent Decree in the context of the District of Columbia Public Schools' ongoing institutional reform efforts, after which the Special Master, class counsel, defendants' counsel, and several objectors discussed their views on the adequacy of the settlement. At the conclusion of the second day of the hearing, the Court adjourned the hearing and directed the

parties to resume negotiations, particularly with respect to Section IV.B of the proposed consent decree.

After hearing from the parties and the objectors, the Court expressed its concern with certain provisions of the proposed Consent Decree – most importantly, the low percentages for timely implementation of hearing officer determinations ("HODs") and settlement agreements ("SAs") set forth in Section IV.B.4 of the proposed decree, when it was explained by counsel that those percentages were not meant to include the number of cases from the preexisting "Jones initial backlog," but only HODs and SAs issued after entry of the Consent Decree. Thus, "the Jones portion of the case" referred to in Section IV.B.4 was considered by the parties not to include the approximately 2500 cases in the Jones initial backlog. The Court stated then that the relatively low percentages set forth in Section IV.B.4 were only defensible on their face if they included both the "Jones initial backlog" as well as the new cases. Otherwise, much more explanation and support for such percentages was essential.[1]

The Court reminded defendants at the hearing that their ultimate obligation under the IDEA is to timely implement the terms of every HOD and Settlement Agreement, including the time frames established by the Hearing Officer or the settling parties, one hundred percent of the time. The Court acknowledged, however, that one hundred percent Jones compliance going forward may not be possible immediately but that the reasons why that was true in certain cases -- or in certain categories of cases -- had not been explained in the submissions of the parties. The

---

[1]     The confusion as to which cases were to be counted in Section IV.B.4 arose from the misleading use in that Section of the term "the Jones portion of the case" to refer only to new cases, rather than to both new cases and the cases constituting "the Jones initial backlog." This terminology appears to be a holdover from the 2003 Proposed Consent Decree, under which the (much smaller) initial backlog was to be addressed before requirements for future compliance took effect.

Court further acknowledged that a Consent Decree setting unattainable goals for the defendants would not serve the interests of anyone, including the class members.  What defendants have thus far failed to do is to provide the Court (and presumably the objectors) with concrete information explaining why they are unable to attain substantially higher rates of compliance in each year between now and 2011 with respect to new HODs and new settlement agreements.

Another concern alluded to during the Fairness Hearing is the Consent Decree's treatment of new HODs and SAs that are not timely implemented after the agreement goes into effect.  The 2003 Consent Decree had referred to such cases as the "Jones subsequent backlog," and required defendants to make their "best efforts" to eliminate any such backlog after the elimination of the Jones initial backlog.  See 2003 Proposed Consent Decree §§ III.10, IV.D.3.  Although it defines "overdue" HODs or SAs, the new proposed decree does not define or even contain the term "Jones subsequent backlog."[2]  Nor does it impose upon defendants any duty to deal with cases in this new backlog at any time before the date for termination of the Consent Decree.[3]  Put simply, once a new HOD or SA is issued and is not among the percentage of cases that must be implemented each year to avoid the enforcement mechanisms of the Consent Decree, its implementation becomes irrelevant to defendants' compliance until termination many years later.  Because the proposed settlement contemplates that, especially in the first few years

---

[2]    The current proposal in its terms makes no reference to a "Jones subsequent backlog"; it simply refers to cases where there are "overdue" or "untimely" HODS or SAs.

[3]    Under the proposed Consent Decree, the Jones case cannot terminate until "at least 90% of the overdue Jones cases are no more than 120 days overdue; and none of the overdue cases is more than a year overdue."  Proposed Consent Decree § IX.B.1.b-c.  Under the proposed schedule, however, termination in the Jones case is not slated to occur until 2011, see Consent Decree § IV.B.4.f, rendering this provision valueless to individual class members who have, for example, aged out of the system by then.

of the Consent Decree, a substantial proportion of HODs and SAs will <u>not</u> be timely

implemented, the agreement's failure to deal with the ultimate disposition of these cases – the

"<u>Jones</u> subsequent backlog" – well before termination is a serious infirmity.  Importantly for the

Court's role in settlement, when one puts aside the "<u>Jones</u> initial backlog" in evaluating the

percentages and timetable proposed in Section IV.B.4, why substantially more is not achievable

with respect to new HODs and SAs is not adequately documented, and how parents of children

with unimplemented new HODs and new SAs post-settlement can believe in the fairness,

adequacy or reasonableness of the settlement is never explained.

Finally, the draftsmanship of certain portions of the proposed decree is also

problematic.  Ms. Totenberg stated at the outset of the fairness hearing that a consent decree must

contain specific and clear objectives in terms of measurable standards and goals that can be

monitored and judicially enforced if necessary.  While it is understood that the Consent Decree is

a highly technical document of inevitable complexity, the portions of the decree setting forth the

standards by which compliance and enforcement are assessed must be unambiguous and

especially clear and comprehensible.  Whatever its substantive virtues or vices, the portion of the

proposed decree dealing with <u>Jones</u> compliance (Section IV.B) does not set forth these standards

with clarity.  The Court already has discussed the confusion as to what should (versus what

actually <u>does</u>, in the current draft) constitute "the <u>Jones</u> portion of the case."  It also finds the

language of Section IV.B.5, describing the calculation of defendants' timely implementation of

HODs and SAs for purposes of <u>Jones</u> compliance, to be unclear and unhelpful.  Any further

revisions of the Consent Decree must be drafted with a careful eye towards rendering these

crucial provisions comprehensible not only to the attorneys and officials who have been involved

in the case for years, but also to class members or individuals who should at the very least be able to understand what the proposed settlement means.

In voicing these criticisms, however, the Court wishes to emphasize, as it did throughout the Fairness Hearing and at its conclusion, that in other respects the Proposed Consent Decree – with certain modifications already agreed to by the parties during the hearing – appears to be fair, reasonable, and adequate.[4]  The parties and the mediators have put forth extraordinary efforts to reach consensus on the myriad issues at play here, without losing sight of the ultimate goal of both the statute and this litigation: to ensure the welfare of special education students in the District of Columbia.

In consideration of the foregoing, it is hereby

ORDERED that, with the ongoing assistance of Judge David S. Tatel and Amy Totenberg, Esq., and with the guidance set forth herein, the parties shall continue their efforts at reaching a negotiated resolution of this case, with an eye towards agreeing upon modifications to the Consent Decree that address the Court's concerns with respect to the structure and drafting of the Consent Decree, as well as with respect to the substance of Section IV.B, as expressed at the Fairness Hearing and in this Memorandum Opinion and Order.  The Court is prepared to receive information demonstrating the District of Columbia's capacity to timely implement HODs and SAs in support of the Jones compliance schedule ultimately submitted in the revised Decree in writing and/or through the mechanism of an evidentiary hearing; it is

---

[4]     This statement does not, of course, constitute a final conclusion by the Court as to the adequacy of the Consent Decree as a whole under Rule 23(e) of the Federal Rules of Civil Procedure.

FURTHER ORDERED that the Fairness Hearing is adjourned until such time as the parties notify the Court that they have finalized their negotiated revisions to the Consent Decree and request the Court's review and approval of the revised Decree; and it is

FURTHER ORDERED that, in the absence of a Consent Decree approved by the this Court, trial on the remedy phase of this case shall commence on July 11, 2006 at 10:00 a.m.

SO ORDERED.


/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE: March 17, 2006