UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                    )
MIKEISHA BLACKMAN, et al.,                          )
                                                    )
              Plaintiffs,                           )
                                                    )
       v.                                           )        Civil Action No. 97-1629 (PLF)
                                                    )        Claim of Paula Simmons,
DISTRICT OF COLUMBIA, et al.,                       )        Parent and Next Friend of D.S.
                                                    )
              Defendants.                           )
_____)


OPINION AND ORDER

        This matter is before the Court on a motion for preliminary injunction [1728] filed

by Paula Simmons, parent and next friend of the minor child D.S., on October 6, 2005.  Arguing

that D.S. is a member of both the Blackman and Jones subclasses, plaintiffs sought an Order

directing the District of Columbia Public Schools ("DCPS") immediately to place and fund D.S.

at the Phillips School, a private institution in Annandale, Virginia, and to provide D.S. with

compensatory education.  Plaintiffs' motion also sought reasonable attorneys' fees and costs.

        Pursuant to the Order of Reference issued on February 12, 1999, the Court on

October 7, 2006, referred plaintiffs' motion to Special Master Elise Baach for a Report and

Recommendation.  On April 19, 2006, the Special Master issued her Report and

Recommendation [1829].  The Report concluded that D.S. was neither a Blackman nor a Jones

class member and recommended that plaintiffs' motion be denied.  Plaintiffs filed objections to

the Report and Recommendation on May 8, 2006, challenging some of the Special Master's

findings of fact and conclusions of law, and arguing specifically that D.S. was indeed a member of the <u>Jones</u> class, and that injunctive relief was warranted.

Defendants filed a subsequent response to the Special Master's Report and Recommendation on May 25, 2006.  On June 6, plaintiffs filed a motion to strike defendants' response on the ground that it was not authorized by Rule 53(g) of the Federal Rules of Civil Procedure; they also filed a substantive reply to defendants' filing.  The motion to strike was denied on June 30, 2006.

## I.  BACKGROUND

The Special Master's Report and Recommendation sets forth a more complete account of the circumstances of this case, but the relevant facts are as follows.  Plaintiffs here are D.S., a 12-year-old student enrolled in the District of Columbia Public Schools, and her mother, Paula Simmons.  D.S. has a severe and permanent medical condition that has a significant impact on her physical and emotional state, and thus on her academic performance.  <u>See</u> Report at 1-2. From the age of four, D.S. attended Stanton Elementary School, a public school in the District of Columbia.  <u>Id</u>. at 2.  She was first found eligible for special education services on January 27, 2005.  <u>Id</u>.  An initial Individualized Education Program ("IEP") for D.S. was prepared in March 2005.  This IEP identified Sharpe Health School as the appropriate placement for D.S.  <u>Id</u>.

On June 23, 2005, D.S.'s parent sought an administrative due process hearing to challenge the IEP on the ground that it was prepared without her presence or knowledge, and was never delivered to either her or her advocate.  In their request for a hearing, plaintiffs sought an order directing DCPS to: (1) immediately place and fund D.S. at Phillips School, a private

institution in Annandale, Virginia; (2) prepare an appropriate IEP; and (3) provide D.S. with compensatory education.  Id. at 2-3.

In a Hearing Officer Determination ("HOD") issued on September 2, 2005, the Hearing Officer found that D.S. had been denied a free appropriate public education because "DCPS did not establish that the Parent was ever made aware of the March 14, 2005 IEP." September 2, 2005 HOD at 6.  The Hearing Officer ordered DCPS to convene an MDT/IEP placement meeting within 30 days of issuance of the HOD, but stated that "for everyday [sic] of unavailability of parent/educational advocate/Counsel for the Parent, the deadline herein will be extended one day."  Id.[1]  The Hearing Officer also found that D.S. was entitled to compensatory education "for the period March 14, 2005 thru the end of the 2004-05 School Year[,]" and ordered the MDT/IEP team to "discuss and determine" what compensatory education D.S. should receive.  Finally, the HOD directed that D.S. be placed at Sharpe Health School on an interim basis.  Id. at 7.

On September 12, 2005, plaintiffs filed a motion to reconsider the Hearing Officer Determination, in which they challenged the appropriateness of Sharpe as an interim placement. The parent asked the Hearing Officer to change D.S.'s interim placement to Prospect Learning Center, a public school in the District of Columbia.  See Report at 6.  No evidence regarding Prospect's suitability as an interim or permanent placement had been introduced during the administrative hearing.  Id. at 7.  In their motion to reconsider, the plaintiffs also invoked the "stay put" provision of the IDEA, 20 U.S.C. § 1415(j), to allow D.S. to remain at Stanton.  Id.

---

[1]        MDT is an abbreviation of Multi-Disciplinary Team.

D.S. was not enrolled at Stanton (or any other school), however, until September 19, 2005, 17

days after the HOD issued and 22 days after the start of the school year.  Id.

On October 4, 2005, the Hearing Officer issued an Order suspending indefinitely

consideration of the motion to reconsider, because there was no evidence in the record that

Prospect Learning Center had accepted D.S. as a student.  Id.  The Order noted that "the hearing

officer has no authority to place a student at any school or educational facility without a prior

acceptance for the student from the concerned school or educational facility[.]"  Id.

Plaintiffs filed a motion for preliminary injunction with this Court on October 6,

2005, by which date no MDT/IEP meeting had been conducted.  An MDT/IEP meeting was

convened on October 19, 47 days after the HOD had been issued.  Id. at 8.   The MDT/IEP

meeting notes reflect some controversy over the appropriate placement for D.S.  The DCPS

placement specialist maintained that Sharpe was an appropriate placement, and a representative

from Stanton, where D.S. was enrolled, stated that Stanton could not implement D.S.'s existing

IEP.  See Report at 8; MDT/IEP Meeting Notes at 2.  D.S.'s parent and advocate disagreed with a

placement at Sharpe and refused to sign the IEP, while acknowledging that D.S. could not

receive services until the parent signed the IEP and gave "informed consent."  See MDT/IEP

Meeting Notes at 2.  Based on the parent's and advocate's refusal to sign the IEP, the

multidisciplinary team determined that compensatory education for D.S. was not warranted.  See

id. at 5.

On October 25, 2005, the Special Master convened a meeting at which the parties

agreed to place D.S. at Prospect Learning Center on an interim basis.  On March 26, 2006, the

MDT met and changed D.S.'s interim placement at Prospect to a permanent one.  See Defs'

Resp. to Pls' Obj. at 3 note 4.  At the same meeting, the MDT proposed and adopted a plan to

provide D.S. with compensatory education for the period called for in the September 2, 2005

HOD (from March 14, 2005, through the end of the 2004-05 school year), as well as for the

period from September 2005 to November 2005.  Id.

## II.  DISCUSSION

### A.  *Blackman claim*

The Special Master concluded that D.S. is not a member of the Blackman

subclass.  Plaintiffs did not object to this conclusion.  The Court has considered carefully the

Special Master's conclusions on this issue, finds them to be sound and well-reasoned, and adopts

fully the decision and reasoning set forth in the Report and Recommendation on this issue.

Plaintiff's motion for a preliminary injunction therefore will be denied insofar as it relies on

D.S.'s alleged Blackman class membership.  See Report at 9-10; see also Blackman v. District of

Columbia, 277 F. Supp. 2d 71, 79-80 (D.D.C. 2003).

### B.  *Jones claim*

The Special Master concluded that D.S. is not a member of the Jones subclass on

the ground that DCPS's failure to convene an MDT/IEP meeting within 30 days of the HOD's

issuance did not violate D.S.'s statutory rights because it resulted from plaintiff's invocation of

the IDEA's "stay put" provision, which rendered D.S.'s parent "unavailable" and made the

execution of the IEP impossible.  See Report at 11.  The Special Master also concluded that the

Hearing Officer's failure to act swiftly on plaintiffs' motion for reconsideration of the HOD also

does not give rise to membership in either the Blackman or the Jones subclass.  See Report at 11-

5

12. The Special Master did not discuss whether the Multi-Disciplinary Team's refusal to devise a compensatory education plan when it prepared the October 19, 2005 IEP constituted a deprivation of plaintiff's rights sufficient to merit <u>Jones</u> class membership. The defendants agree with the Special Master's conclusions; the plaintiffs disagree.[2]

Upon consideration of the Special Master's Report and Recommendation and the arguments of the parties, the Court rejects in part the conclusions of the Special Master. It concludes that D.S. is a member of the <u>Jones</u> subclass, because DCPS failed to devise a compensatory education plan at the MDT/IEP meeting despite the conclusion of the Hearing Officer that she was entitled to compensatory education. The Court also concludes that the plaintiffs' claims are not moot.

1. Failure to convene MDT/IEP meeting within 30 days

The Special Master found that the actions of the plaintiffs in this matter, including the invocation of the "stay-put" provision of the IDEA and the filing of a motion for reconsideration of the HOD, contributed to the delay in convening the MDT/IEP. She therefore concluded that the plaintiffs' statutory rights were not violated. <u>See</u> Report at 11. The Special Master notes that "once the Hearing Officer responded to the request for reconsideration, the IEP team did convene[.]" <u>Id.</u> In response to the Special Master's Report and Recommendation, plaintiffs argue that the parent's invocation of the "stay put" provision did not render the parent "unavailable" for purposes of the MDT/IEP meeting, even if the student was "unavailable." <u>See</u>

_____

[2]     The parties' responses to the Special Master's Report and Recommendation also raise the issue of whether plaintiffs' claims are moot because D.S.'s placement at Prospect has become permanent, and because DCPS has devised and begun to implement a compensatory education program for D.S.

Pls' Obj. at 6-14.  Because the Court concludes that the failure to devise a compensatory

education plan at the October MDT/IEP meeting in response to the decision of the Hearing

Officer qualifies D.S. for membership in the Jones subclass, the Court need not reach this point.

### 2.  Plaintiffs' motion for reconsideration

The Special Master concluded that the Hearing Officer's failure to give timely

consideration to plaintiff's motion for reconsideration does not warrant Jones subclass

membership.  See Report at 11-12.[3]  The Jones subclass is defined as:

> All children, now and in the future, who are entitled to have DCPS
> provide them with a free appropriate public education [FAPE] and
> who have been denied same because DCPS either (a) has failed to
> fully and timely implement the determinations of hearing officers,
> or (b) failed to fully and timely implement agreements concerning a
> child's identification, evaluation, educational placement, or
> provision of FAPE that DCPS had negotiated with the child's parent
> or educational advocate[.]

Order of May 14, 1998 [70] at 2-3.  The failure of the Hearing Officer to promptly consider the

motion for reconsideration does not fall within the plain language defining the subclass.  The

Court therefore agrees with the conclusion of the Special Master on this point.  The Court also

observes that (to the Court's knowledge) no provision of the IDEA or of the District of Columbia

Municipal Regulations authorizes the filing of a motion for reconsideration of an HOD.  Such a

motion is not barred, of course – and plaintiffs' counsel cannot be faulted for her creative

lawyering.  But if a plaintiff has no absolute right to file a motion for reconsideration, she also

has no right to have such a motion adjudicated immediately.

---

[3]      Plaintiffs did not object to this conclusion of the Special Master.

3.  Failure to devise compensatory education plan in MDT/IEP meeting

The September 2, 2005 HOD found that D.S. "is entitled to compensatory education for the period March 14, 2005 thru the end of the 2004-05 School Year."  Sept. 2, 2005 HOD at 6.  No evidence of what specific compensatory education would be provided was presented at the meeting, however, so the Hearing Officer instructed the MDT/IEP team as follows:

> At the said MDT/IEP/Placement meeting [to be conducted within 30 days], the form, amount and delivery of compensatory education for the period March 14, 2005 thru the end of the 2004-05 School year, if any, will be discussed and determined.

Id. at 7.  Because plaintiffs filed a motion to reconsider, no MDT/IEP placement meeting took place within 30 days.

After plaintiffs filed a motion for injunctive relief with this Court, a MDT/IEP meeting was convened on October 19, 2005.  D.S.'s parent objected to DCPS's proposed placement of D.S. at Sharpe Health and refused to sign the IEP.  The meeting notes state that "Parent [and] advocate are aware that student will not receive services until IEP is signed and informed consent given."  See October 19, 2005 MDT/IEP Meeting Notes at 2.  With regard to compensatory education, the meeting notes state that:

> DCPS determined the student is not warranted compensatory education services at this time.  The parent has refused to sign IEP or give consent for implementation since IEP development.  Thus, DCPS would not be able to service the student without parental consent.  Therefore, DCPS has not failed to provide services to this student.  Compensatory education is to provide compensation for lost services and the student's educational progress has been harmed.  Under this definition the student is not warranted services.

8

October 19, 2005 MDT/IEP Meeting Notes at 5 (emphasis added).  There is no further discussion of compensatory education in the Meeting Notes.  Defendants argue on the basis of this statement that the MDT/IEP team fully implemented the Hearing Officer's Order that it "discuss and determine" compensatory education, because under the HOD it was "permissible to determine that no services were warranted at that time."  Defs' Resp. at 7.

Assuming for the sake of argument that such a decision might have been within the scope of the Hearing Officer's Order, this clearly is not what the MDT/IEP team actually determined.  Rather, the team determined, on the basis of the parent's <u>contemporaneous</u> refusal to sign the IEP, that DCPS "ha[d] not failed to provide services to this student" in the past.  <u>See</u> October 19, 2005 MDT/IEP Meeting Notes at 5.  This statement makes no sense.  Just because the parent refused to sign the IEP because she objected to the placement <u>now</u> proposed has nothing to do with whether the failings of DCPS <u>in the past</u> must be rectified by providing compensatory education for those past failures.  The Hearing Officer made an explicit finding in September that DCPS had denied D.S. the free, appropriate public education she was guaranteed under the IDEA – specifically, during the period between March 14, 2005 and the end of the 2004-2005 school year – and that D.S. therefore was entitled to compensatory education.  <u>See</u> Report at 6.  The Hearing Officer directed the MDT/IEP team to "discuss and determine" what compensatory education D.S. should receive.  <u>Id</u>.  The team failed to do so, based only on the (unrelated) contemporaneous refusal of the parent to sign the IEP.  Because DCPS "failed to fully and timely implement" this aspect of the Hearing Officer's determination, the Court concludes that D.S. is a member of the <u>Jones</u> subclass.  <u>See</u> Order of May 14, 1998 [70] at 2-3.

4. Mootness

Despite the fact that D.S. now has a permanent placement at Prospect and DCPS now has begun the delivery of compensatory education, plaintiffs argue that their claim is not moot.  They assert that while DCPS agreed to provide compensatory education, in fact only two hours of counseling services and one hour of tutoring actually have been delivered to D.S.  They also relate numerous delays and other difficulties they have had in obtaining the compensatory education DCPS has committed to providing.  Based on this experience, plaintiffs argue that there is a strong likelihood that these difficulties will continue; and that unless the Court orders injunctive relief, DCPS's past failure to provide D.S. with compensatory education is a wrong "'capable of repetition, yet evading review.'"  Reply at 7 (quoting Zearley v. District of Columbia, 116 F. Supp. 2d 109, 112 (D.D.C. 2000)).  Accordingly, plaintiffs argue, "court intervention and an enforceable judgment is required to ensure delivery of all appropriate compensatory services."  Reply at 6.

The Court agrees.  Once it is determined that D.S. is a member of the Jones subclass, it follows that plaintiffs' pending demand for compensatory education – if it has not been adequately met – presents this Court with a live controversy.  See Lesesne ex rel. B.F. v. District of Columbia, 447 F.3d 828, 833 (D.C. Cir. 2006) (holding that existence of an unaddressed claim for compensatory education presents the district court with a live controversy).  As Judge Walton noted in another, similar case:

> The Court's power to grant compensatory education for IDEA violations is undisputed.  Where a person brings an action alleging a violation of the IDEA, the Court is empowered to "grant such relief as [it] determines is appropriate."  20 U.S.C. 1415(i)(2)(C)(iii).  "Federal courts have interpreted 'appropriate

> relief' to include compensatory education as an equitable remedy to
> be granted upon finding that a child has been denied FAPE under
> the Act."  Diatta v. Dist. of Columbia, 319 F. Supp. 2d 57, 64
> (D.D.C. 2004).  "Under the theory of 'compensatory education,'
> courts and hearing officers may award educational services . . . to
> be provided prospectively to compensate for a past deficient program."

Flores v. District of Columbia, 2006 U.S. Dist. LEXIS 39327 (D.D.C. June 15, 2006) at *19-20

(denying DCPS' motion to dismiss as moot when plaintiff asserts that DCPS has not completely

satisfied request for compensatory education) (citing Reid v. Dist. of Columbia, 401 F.3d 516,

522 (D.C. Cir. 2005)) (internal quotation marks and citations omitted).

For the foregoing reasons, it is hereby

ORDERED that [1728] the Motion for Preliminary Injunction filed by Paula

Simmons, Parent and Next Friend of D.S. is GRANTED in part and DENIED in part;

specifically, it is

FURTHER ORDERED that defendants shall continue D.S.'s placement at the

Prospect Learning Center on a permanent basis though the 2006-2007 school year; it is

FURTHER ORDERED that the defendants shall implement the compensatory

education plan referenced by defendants in their Response to Plaintiffs Objections to the Special

Master's Report and Recommendation [Docket No. 1834] at page 3, note 4; and it is

FURTHER ORDERED that as the prevailing party plaintiffs are entitled to

reasonable attorneys fees.

SO ORDERED.

_/s/_____
PAUL L. FRIEDMAN
DATE: August 31, 2006          United States District Judge