UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MIKEISHA BLACKMAN, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 97-1629 (PLF) |
| ) | |
| DISTRICT OF COLUMBIA, et al., ) | Claim of Hazel Hawkins, |
| ) | parent and next friend of K.R. |
| Defendants. ) | |

MEMORANDUM OPINION AND ORDER

On December 13, 2007, claimant Hazel Hawkins, parent and next friend of claimant K.R., filed a motion for preliminary injunction requesting that the Court order the defendants to place and fund her son at the Pathways School ("Mot."). The Court referred the motion to the Special Master pursuant to the February 12, 1999 Order of Reference (and paragraph 134 of the Consent Decree entered into by defendants and class counsel on August 24, 2006). The Special Master filed her Report and Recommendations on December 21, 2007 ("Report"). Defendants filed objections to the Report pursuant to Rule 53(f)(2) of the Federal Rules of Civil Procedure on January 10, 2008 ("Obj."). Claimants responded to the defendants' objections on January 17, 2008 ("Resp."). Defendants filed a supplement to their objections, clarifying a factual assertion that was misstated in their objections, on January 22, 2008 ("Supp. Obj."). Pursuant to the Court's Minute Order of January 29, 2008, defendants filed a supplemental report on January 30, 2008 ("Supp. Report").

Upon careful consideration of the entire record herein, the Court will deny claimants' motion for a preliminary injunction requesting that the Court order the defendants to place and fund K.R. at the Pathways School.

The Special Master and the parties agree on the relevant facts, which the Special Master summarized as follows:

> K.R. is a seventeen year old student who has been identified as emotionally disturbed. K.R. attended two DCPS schools as a young child and became eligible for special education services in the fourth grade. From fifth grade on, he attended several charter schools. While attending the Barbara Jordan Public Charter School in the spring of 2006, a Multi-Disciplinary Team Meeting ("MDT") was held to review recent evaluations. At the time of that meeting -- June 14, 2006 -- K.R. was 16 years, 3 months and was about to enter 9th grade. The evaluation reviewed at that meeting had been conducted at the request of the SEED Charter School to determine whether K.R.'s socio-emotional functioning and attention/behavior control were interfering with his ability to learn. Ten separate measurement tools had been utilized to evaluate K.R. as well as a clinical observation. Based on these evaluations, the MDT participants found that, among other things: a) K.R. had been retained "in grade" three times; b) that he felt angry and helpless; c) that he was angry at his mother for retaining him; d) that these issues needed to be discussed in family therapy; e) that he has poorly developed coping skills; f) that K.R. needed daily behavior contracts; g) that he need a structured school environment with no more [than] 5 students and, [h]) that his school needed to provide weekly updates to parents. Following this meeting, it appears that K.R. was placed at Spingarn Center, a DCPS program for students with emotional disturbances.
>
> Over the course of the 2006-07 school year, K.R. attended the Spingarn Center. In June 2007, an annual Individual Education Program ("IEP") meeting was held. According to his reading instructor, K.R. "has the capacity to be successful, if he would only come to school regularly and on time." Indeed, notes from subject areas teachers are replete with references such as, "student is non-compliant with attendance" and "student had poor attendance." One of the recommendations of the team was that K.R. repeat 9th grade, this time at the age of 17. As will be discussed in some detail below, it appears that at no time during the school year had Spingarn Center developed a behavior plan or provided family counseling, as recommended in the June 2006 meeting.

On June 25, 2007, a due process complaint was filed with the Student Hearing Office ("SHO") by counsel for K.R. alleging that DCPS had failed to provide K.R. with a suitable placement and that Spingarn had failed to implement the requirements of the IEP.  A hearing was held on August 29, 2007 and on September 21, 2007, a Hearing Officer Determination ("HOD") was issued.  With respect to the appropriateness of the placement at the Spingarn Center, the HOD found that an expert on emotional disturbances attributed K.R.'s absenteeism to his fear for his safety as a result of gang activity near the school.  Nevertheless, the *HOD did not rule that the Spingarn placement was inappropriate.*

> Petitioner [K.R.] has not sustained its [sic] burden of proof on the inappropriateness of the placement at the Spingarn Center.  The testimony presented indicated that there were problems near the school related to gang activity which made the student fearful to attend class.  Ms. Ingram testified that the student never informed her of these concerns.  She further testified that on occasion there were reports that the student failed to show for class but he was seen at or near the school's bus stops on school days.  Here, the student has not availed himself the opportunity to receive and [sic] educational benefit.  There was no sufficient showing that the therapeutic and academic programs at the Spingarn Center were inappropriate.  Here, the Petitioner did not show how the placement was inappropriate.

September 21, 2007 HOD at p. 5.  *However, with respect to implementation of the IEP, the HOD found that K.R. had sustained [his] burden of proof.*

> In this case, the Petitioner has sustained its [sic] burden of proof on the failure of DCPS to implement the student's IEP.  The student has had a history of non compliant behavior and the MDT team devised a plan to address these issues which recommended utilizing behavior contracts and providing family counseling pursuant to the section 34 CFR 300.34(c)(8)(1) which provides parents with counseling to allow them to support the needs of the child.  DCPS offered no proof that either of these services were provided.  DCPS did show evidence that the student had a pattern of absences and also DCPS provided offered [sic] testimony that the student's parent was informed of this problems [sic] but made excuses.  Here the parent's denial of the student's non-conforming conduct should have been met with an opportunity for parental training and counseling. IDEIA mandates and requires a local educational agency (LEA) comply with regulations to provide related services for an eligible disabled student and parents in need

>	of counseling and training.  In the facts and circumstances here
>	DCPS has denied this student free and appropriate public
>	education.
>
> September 21, 2007 HOD at p. 5.
>
>	As a result of this finding, the HOD ordered DCPS to convene an MDT/IEP meeting within ten (10) school days to "review all current evaluations, review and revise the student's IEP and discuss and develop plans to implement all related services. The team can also discuss placement if warranted."
>
>	That meeting was never scheduled and it is the position of the staff at the Spingarn Center that they did not receive the September 21 HOD or any instructions alerting them to the need for a meeting.  Meanwhile, K.R. did not, and apparently has not, attended school at all this year.  Two days after the window in which Spingarn Center was directed to convene a meeting, counsel for K.R. filed a Motion with the Student Hearing Office seeking a "directed placement" at a private program.  Briefs were submitted by both DCPS and counsel for K.R. on the matter in late November and a status hearing took place on December 5, 2007 to consider a Hearing Officer's authority to direct a placement under the circumstances.

Report at 2-4 (emphasis added) (footnote omitted).

On December 10, 2007, the Hearing Officer determined that he did not have the authority to grant the motion for a directed placement. See Report at 4-5. The instant motion for preliminary injunction was filed on December 13, 2007. Defendants convened an MDT/IEP meeting on January 10, 2008, at which they established a family counseling program for K.R. and his parents and a behavioral contract for the student. This meeting therefore implemented some of the requirements of the September 21, 2007 HOD. As defendants informed the Court in a supplement to their objections filed on January 22, 2008, however, some aspects of the September HOD remained unfulfilled and would be addressed at another meeting convened for that purpose. See Supp. Obj. at 2. That MDT/IEP meeting was held on January 25, 2008, and the defendants filed a supplemental report with the Court on January 30, 2008.

As a preliminary matter, the Court agrees with the parties and the Special Master that it is clear that K.R. is a member of the Jones subclass. See Report at 5. In this particular case, however, the Court declines to order the relief that the Hearing Officer *failed* to grant the claimants – an Order directing a nonpublic placement – as a sanction for the defendants' failure to provide the relief that the Hearing Officer *did* award the claimants. The Court will begin by noting what this is not; this is not direct district court review of the Hearing Officer Decision of September 21, 2007. The IDEA provides as follows for district court review of Hearing Officer Decisions:

> Any party aggrieved by the findings and decision . . . shall have the right to bring a civil action with respect to the complaint presented pursuant to this section . . . . In any action brought under this paragraph, the court . . . shall receive the records of the administrative proceedings, . . . shall hear additional evidence at the request of a party, and . . . basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

20 U.S.C. § 1415(i)(2). As far as the Court is aware, claimants elected not to bring a civil action under this provision (or, if they did, this proceeding is not it).

To review, claimants received a favorable ruling from the Hearing Officer with respect to DCPS' failure to implement K.R.'s IEP, and an order directing DCPS to do so.[1]

---

[1] Specifically, the September 21, 2007 HOD: ordered that petitioner's relief would be granted in part; declared that petitioner was the prevailing party; found a denial of a free appropriate public education for DCPS' failure to implement K.R.'s IEP; and ordered that "DCPS shall, within ten (10) school days of the receipt of the this [sic] HOD shall [sic] convene MDT/IEP meeting to review all current evaluations, review and revise the student's IEP and discuss and develop plans to implement all related services. The team can discuss placement if warranted." The HOD also provided that "[a]ll communications and notices shall be sent through the parent's counsel" and that "[a]ny delay in the above time frames caused by the student or the student's counsel shall result in an extension of one day for each day of delay." September 21, 2007 HOD.

Claimants failed to convince the Hearing Officer, however, that K.R.'s placement was inappropriate and, as a result, the Hearing Officer declined to order that the placement be changed – the very relief claimants now seek from this Court.[2] If claimants would like a court to review the Hearing Officer's refusal to direct a specific placement for K.R., claimants should follow the procedures set forth in the IDEA.

This is not to say that the Court approves of the defendants' actions in this matter. The defendants' failure to implement K.R.'s IEP, even after a Hearing Officer directed them to do so, is a sad reminder of how much special education services in the District of Columbia still have to improve. But the Court will not reward claimants' counsel's end run around the procedures provided for in the IDEA any more than it would reward the defendants for ignoring the procedures laid out in the IDEA.

The Court is troubled by the allegations regarding the refusal of claimants' counsel to attend the MDT/IEP meeting scheduled by DCPS for January 10, 2008 – the meeting that was part of the relief ordered by the Hearing Officer in September 2007. See Obj. at 17.[3] The special education plaintiffs' bar should not flatly refuse to cooperate with the defendants, either out of frustration, or out of a hope that it will enable their clients to obtain a private placement from this Court or any other.

---

[2] The Court notes that in their motion, claimants do not request an Order directing the defendants to comply with the HOD or to take any of the specific actions required by K.R.'s IEP – they are asking only for a specific placement, the one aspect of relief that was denied to them in the September 21, 2007 HOD.

[3] Claimants' counsel also refused to participate in the January 25, 2008 MDT/IEP meeting, stating that "my client and I do not feel there is a need for an IEP meeting at this time." See January 22, 2008 Letter from Bogin to Ingram, Exhibit to Supp. Report.

The Court is equally troubled that DCPS held this long-overdue meeting on January 10, 2008, the *same day* that its objections to the Special Master's Report on this preliminary injunction proceeding was due.

Regardless, the Court will not allow the mechanism created by the February 12, 1999 Order of Reference to the Special Master to deal with emergency situations, and affirmed by paragraph 134 of the Consent Decree, to be used to bypass the procedures set forth in the IDEA itself. If claimants want to appeal the part of the September 21, 2007 HOD that they were "aggrieved by," they should do so pursuant to 20 U.S.C. § 1415(I). The Blackman class action lawsuit is about ensuring that the defendants *implement* HODs, not about reviewing, reversing or amending those HODs. The procedure for seeking such relief is clearly set out in the IDEA itself.

Accordingly, upon careful consideration, it is hereby

ORDERED that claimant Hazel Hawkins' [2035] motion for a preliminary injunction requesting that the Court order the defendants to place and fund her son at the Pathways School is DENIED. This denial is without prejudice to claimants filing a separate lawsuit or due process hearing request if appropriate, or another appropriate motion in this case if the defendants continue to fail to implement a Hearing Officer decision in their favor.

SO ORDERED.

/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE: February 1, 2008