UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
NIKITA PETTIES, et al.,                 )
                                        )
        Plaintiffs,                     )
                                        )
    v.                                  )    Civil Action No. 95-0148 (PLF)
                                        )
DISTRICT OF COLUMBIA, et al.,           )
                                        )
        Defendants.                     )
_____)
                                        )
MIKEISHA BLACKMAN, et al.,              )
                                        )
        Plaintiffs,                     )
                                        )
    v.                                  )    Civil Action No. 97-1629 (PLF)
                                        )
DISTRICT OF COLUMBIA, et al.,           )
                                        )
        Defendants.                     )
_____)
                                        )
JAMES JONES, et al.,                    )
                                        )
        Plaintiffs,                     )
                                        )
    v.                                  )    Civil Action No. 97-2402 (PLF)
                                        )
DISTRICT OF COLUMBIA, et al.,           )
                                        )
        Defendants.                     )
_____)

OPINION

Each of these cases is before the Court for a determination of the same question:

Whether the statutory cap, currently found in Section 122 of the District of Columbia

Appropriations Act, on the District of Columbia's ability to pay attorneys' fees to prevailing parties in suits under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.*, applies to these class action lawsuits, and if so, how.  This is a question of first impression.  Indeed, these cases may constitute the only time that this question will ever be considered, because so far as the Court is aware, these are the only class action suits pending in the United States District Court for the District of Columbia to enforce rights under the IDEA, and Congress has not applied the fee cap nationwide, but only to lawyers who represent students and parents in the District of Columbia.  For the following reasons, the Court concludes that under its plain and unambiguous language, the statutory fee cap does not apply in these cases in the manner that the defendants argue that it does.

## I.  RELEVANT PROCEDURAL HISTORY

Each of the above-captioned matters has been pending before the undersigned for over a decade.

In <u>Petties v. District of Columbia</u>, Civil Action No. 95-0148, plaintiffs filed a class action lawsuit under 42 U.S.C. § 1983 against the District of Columbia, the Superintendent of  the District of Columbia Public Schools ("DCPS") and the Director of Special Education for DCPS, because DCPS had consistently failed to pay the costs of special education placements or related services to private providers, either fully or on a current or timely basis as required under the Individuals With Disabilities Education Act.  As a result of this failure, many of the private providers threatened to terminate students' placements.

2

On March 17, 1995, the Court granted plaintiffs' motion for a preliminary injunction in Petties, finding that "unless defendants fully and immediately fund all DCPS students currently in private special education placements and/or receiving related services from private providers and, in addition, give adequate written assurances that such payments will be made on a current basis in the future, many, if not all of those students will have those placements and/or services terminated, and there is no indication that appropriate alternative placements will be available to meet the students' individual needs." Petties v. District of Columbia, 881 F. Supp. 63, 64 (D.D.C. 1995).

On the same day the Court certified a plaintiff class in Petties under Rule 23(b)(2) of the Federal Rules of Civil Procedure, defined as follows:

> all [DCPS] students currently placed in private special education
> schools or receiving special education and/or related services from
> a private third party provider, all [DCPS] students who currently
> are receiving related services from private providers, and all
> [DCPS] students who have been determined by an administrative
> decision or by agreement with the DCPS to be eligible to receive
> services from private providers (including private placements).

Petties v. District of Columbia, 881 F. Supp. at 64.  On July 21, 1995, the Court modified the preliminary injunction and class certification specifically to include all DCPS students with disabilities whose private special education placements and/or related services are funded by the District of Columbia Department of Human Services.  See Petties v. District of Columbia, 894 F. Supp. 465, 469 (D.D.C. 1995).

The Blackman/Jones litigation also arises from the failure of the District of Columbia Public Schools to meet its obligations to special education students under the Individuals with Disabilities Education Act, and it also was filed under 42 U.S.C. § 1983 to

enforce those rights.  On July 17, 1997, the plaintiffs filed a complaint in <u>Blackman v. District of Columbia</u>, Civil Action No. 97-1629, against DCPS, the District of Columbia, the Chief Executive Officer of DCPS, and the Director of Special Education for DCPS, alleging that the defendants had failed to timely respond to students' and parents' requests for administrative due process hearings pursuant to the IDEA.  Three months later, on October 16, 1997, a second suit was filed against the same defendants.  This case, <u>Curtis v. District of Columbia</u>, Civil Action No. 97-2402, concerned defendants' failure to timely implement Hearing Officer Determinations ("HODs") and settlement agreements ("SAs") as required by the IDEA.

On October 22, 1997, the Court certified <u>Blackman</u> as a class action under Rule 23(b)(2) of the Federal Rules of Civil Procedure.  On May 14, 1998, the Court consolidated the <u>Curtis</u> and <u>Blackman</u> cases, denied defendants' motion to decertify the <u>Blackman</u> class, certified <u>Curtis</u> as a class, and then consolidated the two classes to create a single class with two subclasses.  <u>See</u> Order (May 14, 1998); <u>see also</u> Opinion (June 3, 1998).  The <u>Blackman</u> subclass was defined as:

> all persons now, and in the future, who present complaints to DCPS pursuant to Section 615(b)(6) of the IDEA and whose requests for impartial due process hearings under Section 615(f) of the IDEA and D.C. Mun. Regs. Tit. 5, § 3021.5 are overdue according to those provisions; and their next friends.

Order (May 14, 1998).  The <u>Curtis</u> subclass (now referred to as the <u>Jones</u> subclass) was defined as:

> all children, now and in the future, who are entitled to have DCPS provide them with a free appropriate public education [FAPE] and who have been denied same because DCPS either (a) has failed to fully and timely implement the determination of hearing officers, or (b) failed to fully and timely implement agreements concerning

4

> a child's identification, evaluation, educational placement, or
> provision of FAPE that DCPS has negotiated with the child's
> parent or educational advocate.

Id.[1]

On June 3, 1998, the Court granted summary judgment for the Blackman/Jones

plaintiffs on the issue of defendants' liability, finding there to be no genuine issue of material fact

as to defendants' failure to meet their binding obligations to the class members under the IDEA.

See Opinion (June 3, 1998).  The Court did not at that time prescribe an immediate remedy for

defendants' failure to comply with the law, and instead ordered the parties to jointly file a

"proposed plan and schedule for resolution of the issue of remedy."  Order and Judgment (June

3, 1998).  The Court did so in recognition of the fact that because "the District simply [did] not

have the resources to come into immediate compliance" with the IDEA, "a broad, class-wide

preliminary injunction requiring the District to immediately comply with its statutory and

regulatory obligations" would be "ineffective and impractical."  Blackman v. District of

Columbia, 185 F.R.D. 4, 5 (D.D.C. 1999); see Order (June 3, 1998).  By 1999, however, the

Court concluded that the District had ignored its obligations, even in severe cases, and, because

the question of class-wide remedy would not likely be resolved imminently, it appointed Elise

Baach, Esq., as a Special Master.  Ms. Baach was appointed "for the limited purposes of assisting

the Court in resolving the requests for immediate injunctive relief."  Blackman v. District of

Columbia, 185 F.R.D. at 7.  This was "the least intrusive and most effective way to ensure that

---

[1]      Curtis v. District of Columbia subsequently was re-captioned Jones v. District of
Columbia when Shaquette Curtis, the original named plaintiff, left the District of Columbia
Public Schools.  Hereafter, the Court will use the case names "Blackman" and "Blackman/Jones"
interchangeably.

the noncompliance with the IDEA which gave rise to liability does not cause irreparable injury to any individual class member pending the determination of class-wide relief." Id. at 8.

The Order of Reference entrusted the Special Master "with the dual function of facilitating a mutually satisfactory resolution of each such individual claim, and, in the absence of a mutually acceptable resolution, providing the Court with a report and recommendation with respect to whether any particular plaintiff is entitled to preliminary injunctive relief." Blackman v. District of Columbia, 185 F.R.D. at 9. The Order broadly applied to "any motion filed in this Court by a member or members of the class certified in this case which seeks a temporary restraining order, a preliminary injunction or other emergency injunctive relief in addition to or more quickly than any relief that will be afforded to the class as a whole either after trial . . . or upon settlement, for injury stemming from the liability that the Court has found in this case." Id. The Order of Reference included a detailed mechanism by which the Special Master would assist the Court in providing a plaintiff relief while concurrently protecting the interests of the District. See id. at 9-10.

After many years of negotiations, various proposals, fairness hearings, and finally mediation, the parties finally executed, and on August 24, 2006 the Court approved, a Consent Decree on the issue of remedy in Blackman/Jones. As a result, there is one relevant procedural difference in the two lawsuits at this stage. Petties is still an open case, while Blackman/Jones has been resolved through the Consent Decree approved by the Court in an Opinion and Order dated August 24, 2006. See Blackman v. District of Columbia, 454 F. Supp. 2d 1 (D.D.C. 2006) (approving Consent Decree); see also Blackman v. District of Columbia, Civil Action No. 97-1629, 2006 WL 2456413 (D.D.C. Aug. 24, 2006) (Consent Decree). The Blackman/Jones

6

Consent Decree provides that the "Court will retain jurisdiction over this case for the purposes of interpreting, monitoring, and enforcing compliance with all provisions of the Consent Decree, binding agreements of the parties, binding decisions of the ADR Specialist, and subsequent orders of the Court."  Consent Decree ¶ 154.

The Consent Decree also provides that "[i]n light of the Court's finding on liability, Plaintiffs are the prevailing party and, as such, class counsel are entitled to reasonable attorney fees."  Consent Decree ¶ 143.  The Blackman/Jones parties, plaintiffs and defendants together, filed a joint motion on October 5, 2007, agreeing that $1,820,000 is the sum of reasonable attorneys' fees due to plaintiffs in Blackman/Jones for the period from the start of the lawsuit through July 26, 2006.  The Court awarded that sum, plus costs, to the Blackman/Jones plaintiffs in a consent order that was issued on October 12, 2007 – but the Court did not order the defendants to pay the full amount at that time.  See Order (October 12, 2007).  Rather, the Court ordered the parties to brief the question whether the statutory cap on payment of attorneys' fees by the District of Columbia applies to Blackman/Jones.  See id.  Those briefs now have been filed.[2]

---

[2]     The papers submitted to the Court on this issue from the parties in Blackman/Jones include: Defendants' Memorandum of Points and Authorities on Applicability of the Congressional Fee Cap to Attorneys Fees and Costs [Dkt. 2021] ("Bl. Def. Mem."); Plaintiffs' Brief in Support of Order for Full Payment of Reasonable Attorneys' Fees Agreed to by the Parties [Dkt. 2022] ("Bl. Pl. Mem."); Reply Memorandum of Defendants on Applicability of the Congressional Fee Cap to Attorneys' Fees and Costs [Dkt. 2026] ("Bl. Def. Rep."); and Plaintiffs' Response in Support of Full Payment of Fees Awarded to Counsel Representing Class of Disabled D.C. Public School Students [Dkt. 2027] ("Bl. Pl. Rep.").

In Petties, by contrast, there are two pending motions for quarterly attorneys'

fees.[3]  The defendants have been paying Petties plaintiffs' class counsel attorneys' fees and costs

in quarterly increments for many years.  "Between April and September 1995 the district court

issued a series of injunctions and contempt orders in an effort to bring the District into

compliance with the IDEA.  See Petties v. District of Columbia, 897 F. Supp. 626, 627-28

(D.D.C.1995).  In June, 1995 the plaintiffs, in order to finance this continuing litigation, began

filing quarterly motions for attorneys' fees.  Their first 14 such motions, which the District did

not oppose, were based upon the provision for attorneys' fees in the IDEA."  Petties v. District of

Columbia, 227 F.3d 469, 471 (D.C. Cir. 2000).  The Petties plaintiffs filed these motions

pursuant to an Order issued by this Court in 1995 which provides:

> Plaintiffs' counsel will file on a quarterly basis an application for
> fees and costs associated with the monitoring provided herein.
> Defendants may file a response within fourteen (14) days fo the
> filing of the application for fees and costs and plaintiffs' counsel
> may file a reply within five (5) days of the filing of defendants'
> response.  The fees and costs approved by the Court will be paid by
> defendants within thirty (30) calendar days of said approval.

Order (June 29, 1995).

---

[3]        The papers submitted to the Court on this issue from the parties in Petties include:
Plaintiffs' Motion for Attorneys Fees and Costs [Dkt. 1427] ("Pett. Pl. Mot."); Defendants'
Memorandum of Points and Authorities in Opposition to Plaintiffs' Motion for Attorneys Fees
and Costs [1429] ("Pett. Def. Opp."); Plaintiffs' Reply to Defendants' Memorandum in
Opposition to Plaintiffs' Motion for Attorneys' Fees and Costs [1446] ("Pett. Pl. Rep."); and
Surreply of Defendants ("Pett. Def. Sur.").  This motion relates to attorneys' fees and costs for
"monitoring and seeking to enforce defendants' compliance with the Court's Orders in this
matter during the period of September 1, 2004 through November 30, 2004."  Pett. Pl. Mot. at 1.

        There is a second pending motion for attorneys' fees and costs for Petties class
counsel filed on July 8, 2007, for attorneys' fees and costs for the period between December 1,
2004 and February 28, 2005.  In opposition, the defendants filed a short statement incorporating
by reference their opposition to the May 3, 2007 motion.

In 1999, the defendants urged the Court in <u>Petties</u> to consider the then newly-enacted cap on attorneys' fees stemming from IDEA proceedings, then found in Section 130 of the District of Columbia Appropriations Act of 1999.  In 1999, the fee cap limited the attorneys' fees that the District of Columbia could pay to prevailing IDEA plaintiffs to $50 per hour and $1300 per case – but the defendants did not argue at that time that the $1300 limit per case applied to the <u>Petties</u> litigation.  <u>See</u> <u>Petties v. District of Columbia</u>, 55 F. Supp. 2d 17, 20 n.2 (D.D.C. 1999).  Rather, the defendants argued only that the $50 per hour limit applied.  <u>See</u> <u>id</u>.[4]

The Court held a motions hearing and issued an oral opinion on May 12, 1999, concluding that:

> Section 130 of the District of Columbia Appropriations Act of 1999, which is part of the Omnibus Consolidated and Emergency Supplemental Appropriations Act of 1999, Pub.L. No. 105-277, does not apply to plaintiffs because this action was brought pursuant to 42 U.S.C. § 1983, rather than under the IDEA. Plaintiffs therefore are entitled to recover attorneys' fees  pursuant to 42 U.S.C. § 1988, without regard to the limitations imposed by Section 130.

Order (May 14, 1999).

The Court stayed its Order pending appeal.  <u>See</u> Order (May 14, 1999).  In an Opinion and Order dated July 9, 1999, the Court modified the May 14, 1999 Order, specifically with respect to the details of the stay pending appeal.  <u>See</u> <u>Petties v. District of Columbia</u>, 55 F. Supp. 2d at 19.  On appeal, the D.C. Circuit held that the interim fee awards were non-appealable interlocutory orders over which it lacked jurisdiction.  <u>See</u> <u>Petties v. District of Columbia</u>, 227

---

[4]     There were other issues presented that are not relevant at this time, such as whether the fee cap could be applied retroactively.  <u>See</u> <u>Petties v. District of Columbia</u>, 55 F. Supp. 2d at 18-20.

F.3d at 301; Petties v. District of Columbia, No. 99-7109, 1999 WL 1336123 (D.C. Cir. Dec. 28, 1999). Since then, the defendants have consented to – and have paid – a number of quarterly awards of attorneys' fees to the Petties class. See, e.g., Order (January 26, 2007).

Disagreeing with this Court's May 14, 1999 Order, see supra at 9, the D.C. Circuit subsequently held that "an action brought pursuant to 42 U.S.C. § 1983 to enforce IDEA rights is a suit "under" the IDEA and thus subject to the [fee cap] rider." Blackman v. District of Columbia, 456 F.3d 167, 170 (D.C. Cir. 2006).[5]

## II. DISCUSSION

"A rider to the District of Columbia Appropriations Act [enacted by Congress] imposes limits on the fees the District may pay under the Individuals with Disabilities Education Act . . . to attorneys who represent prevailing parties against the District of Columbia Public Schools." Calloway v. District of Columbia, 216 F.3d 1, 2 (D.C. Cir. 2000). This Court held in Calloway that the language of the fee cap rider restricted only the District's authority to pay attorneys' fees, not the authority of the Court to *award* fees under the IDEA. On appeal, the court of appeals rejected the District of Columbia's argument to the contrary and, based on the plain language of the fee cap legislation, agreed with this Court that the rider restricts only the District's ability to pay attorneys' fees, not court authority to award fees pursuant to the IDEA. See id. at 9-10.

_____

[5]       Despite the case name, this D.C. Circuit opinion was not issued in Blackman. Rather, it resolved an appeal by a plaintiff named Chavez whose case was consolidated, in this Court and on appeal, with the Blackman litigation. The D.C. Circuit dismissed the appeal from the Blackman order and two other orders because those orders were not final, while the Chavez order was properly certified under Rule 54(b) of the Federal Rules of Civil Procedure. See Blackman v. District of Columbia, 456 F.3d at 174-76 and n. 9.

The current fee cap provision is found in Section 122 of the 2006 District of

Columbia Appropriations Act.  It provides, in its entirety:

> (a)  None of the funds contained in this Act may be made available
> to pay --
>
> (1)  the fees of an attorney who represents a party in an action or an
> attorney who defends an action brought against the District of
> Columbia Public Schools under the Individuals with Disabilities
> Education Act (20 U.S.C. 1400 *et seq.*) in excess of $4,000 for that
> action; or
>
> (2)  the fees of an attorney or firm whom the Chief Financial
> Officer of the District of Columbia determines to have a pecuniary
> interest, either through an attorney, officer, or employee of the
> firm, in any special education diagnostic services, schools, or other
> special education service providers.
>
> (b)  In this section, the term "action" includes an administrative
> proceeding and any ensuing or related proceedings before a court
> of competent jurisdiction.

Pub. L. No. 109-115, 119 Stat 2396, 2519 (2005), *cont'd in effect*, Revised Continuing

Appropriations Resolution, Pub. L. No. 110-5, 121 Stat. 8 (2007).[6]  Like Section 130 before it,

Section 122 does not resolve the possible "incongruity," <u>Calloway v. District of Columbia</u>, 216

F.3d at 10, between permitting an award of attorneys' fees by the Court in any amount while at

the same time restricting the District's ability to pay above a certain amount.

In opposing the pending motion for attorneys' fees in <u>Petties</u>, defendants argue

that because of the fee cap in Section 122, "[t]here is simply no discretion under these

circumstances either for defendants to pay, or the Court to order defendants to pay, an amount of

---

[6]       For a history of, and citations to, the successive fee cap statutes applicable to suits
against DCPS, <u>see</u> <u>Whatley v. District of Columbia</u>, 447 F.3d 814, 816-17 (D.C. Cir. 2006);
<u>Blackman v. District of Columbia</u>, 456 F.3d at 171; <u>Armstrong v. Vance</u>, 328 F. Supp. 2d 50,
60-61 (D.D.C. 2004).

attorneys' fees in excess of the statutory cap." Pett. Def. Opp. at 2.  Defendants' argument is

fairly straightforward: This is so, even in these class action cases, because a class action is a

"unitary action."  See id. (citing Jester v. District of Columbia, 474 F.3d 820, 821 (D.C. Cir.

2007)).  And, defendants argue, Congress removed language that existed in previous iterations of

the fee cap statute – which provided that "compensation and reimbursement in excess of such

maximum may be approved for extended or complex representation" – that might have allowed

for payment above $4000.  Because that language no longer exists, defendants assert, there is no

way that they can pay more than $4000.  See Pett. Def. Opp. at 4.

   The Court will address the last argument first.  The removal of the exception for

"extended or complex representation" found in previous D.C. Appropriations Acts does not

necessarily speak to the question of whether or not the fee cap, as it exists today, applies to class

actions under its own plain language.  With respect to the unitary action argument, the Court is

also not persuaded that it is dispositive or that any case law supports it.  In Jester v. District of

Columbia, the D.C. Circuit held that a particular student's administrative hearing before a

hearing officer and the judicial review by the district court of that hearing officer's decision with

respect to that student are the same "unitary action" for purposes of the fee cap.  See Jester v.

District of Columbia, 474 F.3d at 822.  There is no discussion in that case, however, of multiple

students in a single case, or of class action lawsuits, or of the statutory language at issue in this

case – "a party" – that the Court concludes is dispositive of this issue.

   Beyond these points, the Petties plaintiffs raise six arguments as to why the

defendants' position is without merit: (1) it is procedurally deficient because if fails to comply

with the Federal Rules of Civil Procedure for modification or vacating of a court order; (2) the

law of the case requires that quarterly fees be paid by the defendants to plaintiffs' class counsel; (3) defendants should be equitably estopped from raising the cap as a defense to payment at this time; (4) defendants are misinterpreting the statute, which plaintiffs assert applies only to individual cases and not to class actions, as evidenced by the phrase "a party"; (5) if the cap is applicable, it should be applied to each member of the class individually, permitting defendants to pay $4000 multiplied by the number of Petties class members; and (6) if the cap applies, the Court could and should order the payment of plaintiffs' attorneys' fees from the fines the defendants paid into the Court Registry long ago.  See Pett. Pl. Rep. at 2-3 (summarizing arguments).

The Blackman plaintiffs' class counsel has incorporated by reference the arguments submitted by Petties class counsel, although the two plaintiff classes are represented by different groups of unaffiliated lawyers.  See Bl. Def. Mem. at 2 n.3.  Blackman plaintiffs' class counsel asserts that the plain language of the fee cap limits its applicability to individual actions, rather than to class actions such as these.  The Blackman plaintiffs argue that the cap does not operate, under its own plain language, such that class counsel may receive only $4000 total for representing an entire class of plaintiffs – as opposed to "a party."  See Bl. Pl. Mem. at 5-8.

> When engaging in statutory interpretation, the Court must:
>
> start with the plain meaning of the text, looking to the "'language itself, the specific context in which that language is used, and the broader context of the statute as a whole.'" United States v. Barnes, 295 F.3d 1354, 1359 (D.C. Cir. 2002) (quoting Robinson v. Shell Oil Co., 519 U.S. 337, 341 (1997)).  If the language has a "'plain and unambiguous meaning,' our inquiry ends so long as the resulting 'statutory scheme is coherent and consistent.'" Id.

(quoting <u>United States v. Wilson</u>, 290 F.3d 347, 352 (D.C. Cir. 2002) (quoting <u>Robinson [v. Shell Oil Co.]</u>, 519 U.S. at 340 (internal quotations omitted))).

<u>Blackman v. District of Columbia</u>, 456 F.3d at 176; <u>see also</u> <u>United States v. Villanueva-Sotelo</u>, __ F.3d __, No. 07-3055, 2008 WL 398446, *2 (D.C. Cir. Feb. 15, 2008) (The Court's interpretive task begins with the statute's language.  The Court "must first determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case."  If it does, the Court's inquiry ends and the Court applies the statute's plain language. But if the Court finds the statutory language ambiguous, it looks beyond the text for other indicia of congressional intent.) (citing <u>Barnhart v. Sigmon Coal Co.</u>, 534 U.S. 438, 450 (2002); <u>Robinson v. Shell Oil Co.</u>, 519 U.S. at 340; <u>Staples v. United States</u>, 511 U.S. 600, 605 (1994)). "When the statutory 'language is plain, the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms.'"  <u>Arlington Central School District Board of Education v. Murphy</u>, 548 U.S. 291, 126 S.Ct. 2455, 2459 (2006) (considering the IDEA) (quoting <u>Hartford Underwriters Ins. Co. v. Union Planters Bank, N. A.</u>, 530 U.S. 1, 6 (2000), in turn quoting <u>United States v. Ron Pair Enterprises, Inc.</u>, 489 U.S. 235, 241 (1989), in turn quoting <u>Caminetti v. United States</u>, 242 U.S. 470, 485 (1917)).

Thus, as the <u>Blackman/Jones</u> plaintiffs note, "[i]n construing the statute, the Court must begin 'with [the fee cap statute's] plain language.'"  Bl. Pl. Mem. at 5 (citing and quoting <u>Calloway v. District of Columbia</u>, 216 F.3d at 9).  The <u>Blackman/Jones</u> plaintiffs argue that:

> [t]he fee cap's plan language says "a party."  The plain meaning of this language is *one* party, not two or more "parties," particularly parties who are "so numerous that joinder of all" is impracticable. <u>See</u> Rule 23[, FED. R. CIV. P.].  The English language provides for different phraseology to connote the singular and the plural.  If

14

> Congress had intended the fee cap to apply to class actions, it
> would clearly have said so.  See Calloway [v. District of
> Columbia], 216 F.3d at 10.  "Courts must presume that a
> legislature says what it means in a statute and means what it says
> there."  Arlington Central School District Board of Education v.
> Murphy, 548 U.S. __, 126 S.Ct. 2455, 2459 (2006) (construing
> whether IDEA shifts expert costs) (quoting Connecticut Nat. Bank
> v. Germain, 503 U.S. 249, 253-54 (1992)).

Bl. Pl. Mem. at 5-6 (emphasis in original) (footnote omitted).  The Petties plaintiffs make a

similar argument, noting that the statute "makes plain that the focus of the cap is on cases

involving a single 'party,' not 'parties'."  Pett. Pl. Rep. at 7.

      The Court agrees with plaintiffs: The plain and unambiguous language of the fee

cap statute specifically precludes the District from paying fees in excess of $4000 to "an attorney

who represents a party in an action" under the IDEA.  See Pub. L. No. 109-115, 119 Stat 2396,

2519 (2005).[7]  Class counsel in each of these cases, however, is not "an attorney who represents

*a party* in an action" – class counsel in Petties and class counsel in Blackman/Jones represent

hundreds and/or thousands of parties.  As a result, the Court concludes that the cap does not

preclude the Court from ordering defendants to pay and – more importantly – does not preclude

the defendants from paying reasonable attorneys' fees to the plaintiff classes, so long as the total

amount paid by the defendants does not surpass the statutory fee cap multiplied by the total

number of members of the plaintiff class.[8]

---

[7]     The Court need not consider the legislative history cited by any of the parties
because the Court concludes that the statutory text is plain and unambiguous.

[8]     The Court also agrees with the Petties plaintiffs that "had Congress intended the
cap to cover class actions, it 'knew precisely how to do so.'"  Pett. Pl. Rep. at 9 (citing Calloway
v. District of Columbia, 216 F.3d at 9).

The Blackman/Jones plaintiffs are correct that in its briefs, the "District put all its emphasis on the meaning of '*an action*' to support their position that [the fee cap] applies[,]" while plaintiffs "focus the force of their argument on the statute's plainly stated applicability to actions involving the representation of '*a party*.'"  Bl. Pl. Rep. at 3 (emphasis added).  The defendants did not address this argument – which is the primary argument presented by the Blackman/Jones plaintiffs in their memorandum – in their Blackman/Jones reply brief.  The defendants do mention the plaintiffs' "a party" language and argument in their Petties surreply.  See Pet. Def. Sur. at 2-4.  But their argument throughout these proceedings has been based only on their "unitary action" analysis, without doing anything more than mentioning that the Petties plaintiffs emphasize the words "a party."  That is to say, defendants fail to respond directly to the "a party" argument, and instead rely solely on their "an action" theory.

Defendants' argument that a class action is a unitary action does not change the fact that the statute's language is "an attorney who represents *a party* in an action[.]"  See Pub. L. No. 109-115, 119 Stat 2396, 2519 (2005) (emphasis added).  The Court is persuaded that the Blackman/Jones plaintiffs have hit the nail on the proverbial head; because class counsel does not represent "a party in an action" the fee cap cannot be applied in this circumstance such that class counsel is entitled to a total of only $4000 in fees.  Rather, class counsel is entitled to reasonable attorneys' fees, so long as the District's payment of such fees does not exceed $4000 *per plaintiff class member*.

This holding is consistent with previous statements made by this Court over the years.  In an opinion staying the ordered payment of attorneys' fees in excess of the statutory cap pending the outcome of the 1999 appeal in Petties (an appeal that later was dismissed by the D.C.

16

Circuit for lack of jurisdiction, see supra at 9-10) and the appeal in Calloway, the Court stated

that the fee cap, if it applied, "ostensibly would prevent the District from paying any more than

$1300 in fees – $1300 multiplied by the one individual plaintiff in this case."   Chavez v. District

of Columbia, Civil Action No. 98-3036, 2000 WL 35463220, *1 (D.D.C. March 31, 2000); see

also Blackman v. District of Columbia, 145 F. Supp. 2d 47, 50 (D.D.C. 2001) ("Section 129 set a

cap of $60 per hour and an overall cap of $1560 *per student* with respect to proceedings brought

against the District of Columbia under the IDEA.") (emphasis added).[9]

   This reading of the statute also is consistent with the past practice of the special

education plaintiffs bar, the defendants, and this Court with respect to the award of attorneys'

fees to counsel who prevail in motions for preliminary injunctions brought in Blackman/Jones on

behalf of individual class members.  See Bl. Pl. Mem. at 11 and n. 9.  To summarize, counsel for

individual class members frequently have filed motions for preliminary injunctions in

Blackman/Jones seeking immediate relief for their clients.  The Court typically refers such

motions to the Special Master for resolution or a report and recommendation.  See Blackman v.

District of Columbia, 185 F.R.D. 4 (D.D.C. 1999) (Order of Reference); see also supra at 5-6.

This procedure continues by consent of the parties, as provided in paragraph 134 of the

Blackman/Jones Consent Decree.  When the individual class member prevails on one of these

motions, counsel – not class counsel, but rather counsel for the individual class member – files a

motion for attorneys' fees.

---

[9]  This is not the same Chavez Order at issue in the D.C. Circuit's 2006 opinion
captioned Blackman v. District of Columbia, 456 F.3d 167, 170 (D.C. Cir. 2006), supra at 10 and
n.5.

The defendants have never opposed a motion for attorneys' fees filed on behalf of

an individual Blackman/Jones class member in the wake of a prevailing motion for preliminary

injunction on the grounds that the fee cap applies to the Blackman/Jones action as a whole.  In

fact, in relation to the two most recent motions for attorneys' fees arising from the Blackman

preliminary injunction process, currently pending before the Court, defendants' opposition briefs

argue that the fee cap applies – *to each individual plaintiff*.  Defendants specifically request that

in the event that the Court did award attorneys' fees to each of those individual plaintiffs, the

Court limit the amount that it order defendants to pay to $4000 – for each plaintiff.  See

Defendants' Opposition to Plaintiff's Motion for Attorneys' Fees and Costs (Dkt. 2034,

December 11, 2007) at 4; Defendants' Opposition to Plaintiff's Motion for Attorneys' Fees and

Costs (Dkt. 2038, December 18, 2007) at 3-4.  The defendants' position taken in these two briefs,

filed after the briefs about the issue currently before the Court, are consistent with the conclusion

that the Court reaches with respect to fees payable by the District to class counsel – class counsel

is entitled to reasonable attorneys' fees, so long as the District's payment of such fees does not

exceed $4000 *per plaintiff class member*.[10]

As the Blackman/Jones plaintiffs note, "if the fee cap applies to this case at all, it

authorizes $4000 for each member of the class, an amount far greater than the $1,820,000 fees

awarded to the plaintiffs.  Indeed, $1,820,000 is only a fraction of the total fee liability the

District [would face] if each class member brought an individual action.  The combined fee cap

for the approximat[ly] 6500 class members identified in 2006 as presumptively entitled to receive

---

[10]     Because the Court agrees with both sets of plaintiffs that the statute plainly and
unambiguously applies separately to each party, the Court will not address the Petties plaintiffs'
alternative arguments, including the law of the case and estoppel arguments.

Blackman compensatory education awards equals $26,000,000." Bl. Pl. Mem. at 11 n. 9; see also Pett. Pl. Rep. at 16.  To the extent that defendants are alarmed by this $26,000,000 figure, which the underlining in their brief suggests they are, the Court notes that plaintiffs are *not* asking for that amount, which represents the $4000 per party fee cap, as plaintiffs read the statute, multiplied by a number which is the estimated number of individuals in the Blackman/Jones plaintiff class.  Rather, plaintiffs are requesting that the Court order the *payment* of the fees that they already have been *awarded* by the Court – $1,820,000, see Bl. Pl. Rep. at 4-5 – an amount that defendants already have agreed is reasonable.  See Joint Motion for Order on Plaintiffs' Attorneys' Fees and Costs Incurred Through July 26, 2006 (Dkt. 2006, Aug. 30, 2007).  That figure covers fees for plaintiffs' class counsel for a period of over nine years in which they have ably represented the interests of thousands of students with special education needs that were not being met by the District of Columbia, in contravention of federal law.

For the foregoing reasons, the Court will issue an Order directing the defendants to pay the balance of attorneys' fees owed to the Blackman/Jones class under the October 12, 2007 Order.  The Court will also grant the two pending motions for quarterly attorneys' fees in Petties, and will request counsel in Petties to file a joint report with the Court estimating the number of class members in that action, and informing the Court of the amount of attorneys' fees that have been paid to date.  Separate Orders consistent with this Opinion will be issued this same day in Blackman/Jones and in Petties.

_____/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE:  March 11, 2008

19