|  |  |
|---|---|
| MIKEISHA BLACKMAN, et al.,           ) | |
|                                       ) | |
|           Plaintiffs,                 ) | |
|                                       ) | |
| v.                                    ) | CIVIL ACTION NO. 97-1629 |
|                                       ) | consolidated with |
|                                       ) | CIVIL ACTION NO. 97-2402 |
| DISTRICT OF COLUMBIA, et al.,         ) | |
|                                       ) | |
|           Defendants.                 ) | |
|                                       ) | |

### PLAINTIFFS' THIRD REPORT TO DEFENDANTS ON
### *BLACKMAN* TIMELINESS COMPLIANCE

In accordance with the parties' August 5, 2010 ADR agreement, plaintiffs have conducted their third review of due process complaint files maintained by the Student Hearing Office (SHO). This report describes plaintiffs' findings from their review.

In general, plaintiffs note a significant improvement in the District's timely processing of due process complaints and timely issuance of Hearing Officer Determinations (HODs). Although some work remains to be done, especially with regard to docketing resolution sessions, the SHO has effectively addressed the problems plaintiffs noted in their prior reports. In nearly all of the reviewed cases, Independent Hearing Officers (IHOs) managed proceedings, including the parties' motions for continuances, so that HODs were issued within the timeframes required by the IDEA regulation.

Plaintiffs' analysis indicates that HODs were timely issued in 77, or 90.59%, of the 85 cases they reviewed.

1

I. **DETAILS OF PLAINTIFFS' FILE REVIEWS.**

As a part of an ongoing ADR process, in February 2010 plaintiffs reviewed approximately 131 due process cases, including paper files and entries in the SHO's "I-Sight" electronic docketing system, in which continuances were granted in July – December 2009. Plaintiffs found that a number of problems remained in the processing and adjudication of due process hearings, including mishandling of continuances, noncompliance with the Standard Operating Procedures (SOPs), insufficient review by the Chief Hearing Officer (CHO), and inadequate recordkeeping. These problems led to unnecessary delays in the adjudication of cases, forcing students to wait for critical relief, and indicated the continued need for improvements in the professionalism of SHO operations, as required by the Consent Decree. Plaintiffs found that in three of the months for which cases were reviewed, defendants did not meet the 90% timeliness requirement of the Decree.[1]

Subsequently, the parties negotiated an agreement addressing plaintiffs' concerns with defendants' *Blackman* compliance. Among other things, defendants agreed to train hearing officers in the appropriate use of continuances; the need for written motions and orders for continuances; estimating hearing time, so that continuances would be less likely to be needed; computation of the 45 day timeline for HOD adjudication;[2] time for issuing HODs after hearings;

---

[1]  Within 30 days of Final Approval of the Consent Decree, the Defendants shall ensure that: a. Ninety percent (90%) of the requests for hearings are timely adjudicated (by the issuance of a final HOD) or settled.  b. No due process hearing requests are more than 90 days overdue.
Decree, ¶ 29.

[2] Under the IDEA and the Decree, as amended, an HOD is timely when it is issued within 45 days of the expiration of a "resolution period" for attempting to resolve the parent's complaint. The regulation provides that the 45-day timeline starts the day after (1) both parent and school agree to waive the resolution period; (2) the parties agree in writing, after resolution efforts begin but before the end of the 30-day resolution period, that no agreement is possible, or; (3) if both

and use of recordkeeping systems.  Defendants also agreed to change the SHO's continuance order form, to require written narrative supporting the grant or denial of a continuance motion.

Plaintiffs agreed to undertake two reviews of due process cases, processed in January – July 2010, to determine whether defendants' efforts to address problems identified in plaintiffs' report had resulted in improved SHO operations, such that defendants met the 90% timeliness rate.  The first review, of 47 cases processed in January – March, took place in June.  Plaintiffs reviewed all cases in which a continuance was requested during the review period, plus a sample of cases filed during the review period where no continuances were requested.[3]  Plaintiffs reported improvements, including an increase in the number of cases in which a written order provided sufficient justification for granting a written continuance motion; timely review by the Chief Hearing Officer; more accurate estimates of time for hearings, resulting in reduced need for continuances; and a significant improvement in recordkeeping.  Plaintiffs also found some continuing problems:  IHOs continued to tailor continuances so that they had ten days to issue their decisions, regardless of what the movant had requested or the complexity of the case.  The SHO also continued to make errors in determining the beginning of the 45-day period in which hearings are to be conducted and HODs issued.  After receipt of plaintiffs' report, defendants agreed to provide the IHOs with additional technical assistance in these areas.

During four days in August, September, and October, plaintiffs reviewed 85 cases processed by the SHO in April – July 2010.[4]  Plaintiffs reviewed 44 cases in which continuances

---

parties agree in writing to continue the resolution period beyond 30 days, but later either party withdraws from resolution efforts.  [Docket No. 2228.]

[3] Cases in which parents objected to the review after receiving a FERPA notice were excluded.

[4] After three days at the SHO in late August and early September, plaintiffs returned in October to review cases that had not been closed by the time of the first review session.  At the time of

were issued during this period, along with 41 non-continuance cases. As before, plaintiffs sought to determine whether the cases were timely adjudicated and whether the continuances were valid. Plaintiffs also noted any other problems with SHO operations. Specific findings are detailed below.

## II. PLAINTIFFS' FINDINGS REGARDING CONTINUANCES.

### 1. Continuances without written justification.

In February, plaintiffs found that hearing officers rarely explained the reason for granting a motion for a continuance. Instead, hearing officers checked boxes on a form and attributed the continuance to a party, with the official attribution sometimes contradicted by other documents in the record. Failure to provide a written justification makes it impossible for the CHO to determine whether there was good cause for granting the continuance or, where necessary, an exceptional circumstance warranting the continuance.

In this review plaintiffs found a single case where the reason for the continuance was not clearly described in the continuance order; in that case, the justification was readily apparent from the motion requesting an extension of time. (Case no. 2010-0367.)

### 2. Continuances to correct docketing mistakes.

In February Plaintiffs were concerned about a number of cases in which parties had been instructed to file continuances to make cases that were untimely due to scheduling issues at the hearing office appear timely. At least 11 cases fell into this category; of those where the complaint was not withdrawn, only two were deemed untimely by the SHO.

In this review two case files contained some evidence that the IHO attempted to address an earlier scheduling issue through inappropriate use of a continuance, although in both it is

---

plaintiffs' October review, only one case (in which a post-hearing continuance was granted) remained open. This case was not counted in the 85 cases plaintiffs reviewed.

unclear whether the error disadvantaged the petitioner.  Petitioners should not be required to seek continuances, or to accept a longer-than-requested continuance, to make an HOD timely.  Where the SHO or IHO is responsible for a mistake in scheduling, rather than attempting to "fix" the problem by requiring a continuance, the case should be identified as untimely.

a. Petitioner filed the complaint on February 26, 2010.  The only resolution session described in the file took place on April 8, 2010, after the end of the 30-day resolution period.  The IHO and parties agreed that the 45-day period began on April 9, but one of petitioner's witnesses was apparently unavailable during this period.  Petitioner moved for a 10-day continuance so that the hearing could be scheduled for May 24.  After the hearing, the IHO discovered the parties' error regarding the end of the resolution period, and revised her order to grant a 22-day continuance instead of the 10-day extension sought by the petitioner.  Despite the longer-than-requested continuance, the HOD was still issued one day late.  For this reason, and because the IHO clearly manipulated the continuance process to correct a scheduling error (apparently prompted by an untimely resolution session), plaintiffs found this case untimely.  (Case No. 2010-0202.)

b. The petitioner filed a complaint on April 7, 2010.  A resolution session was held on April 22, 2010, in which the parties agreed to proceed to a hearing.  This truncated the 30-day resolution period and made June 6, 2010 the last day of the 45-day period for issuing the HOD.  On May 23, petitioner filed a "Waiver of the 30-Day Timeline" stating, "this is notification that petitioner waives the 30-day timeline for completion of the due process hearing and issuance of the order.  Therefore, [a] second hearing

date of June 9, 2010 can be scheduled." Without filing a continuance order, the IHO then directed the SHO to adjust the HOD due date to June 19, 2010.

On June 9, 2010, the parties filed a joint motion for a continuance so that they could submit written closing arguments on June 15, 2010. The IHO's order, also signed by the CHO, noted that the HOD due date had been June 6, 2010, but that the hearing was held on June 3 and June 9, 2010; as such, the time-extension needed to be calculated from the June 6, 2010 date. The order granted a continuance of 19 days, "to ensure that the SHO's electronic docketing system reflects the proper due date." Although the petitioner's waiver of the rule for calculating the resolution period is questionable, here the IHO did not manipulate the continuance process to correct her own scheduling error. Plaintiffs found this case timely. (Case No. 2010-0381.)

### 3. Continuances to enlarge the Decree's 10-day period for issuing an HOD.

Notations in SHO files indicate that some IHOs have interpreted the Decree obligation to issue a decision "within 10 days of a hearing" to entitle them to ten writing days, regardless of the complexity of the case or the IHO's docket. Decree, ¶ 7(d). (This language was amended on February 2, 2010. *See* Docket No. 2228.) The SHO Standard Operating Procedures (SOPs) state that IHOs have "up to 10 days to prepare a written decision, unless a decision is due earlier." SOP § 700.4. In February plaintiffs noted at least ten cases where a continuance was issued solely to extend the time for the hearing officer to write a decision and ensure a full ten days.

Although the file was inconclusive, in this review plaintiffs noted only one case in which the IHO may have granted a continuance of more time than sought by the petitioner, to protect the ten writing days. (Case No. 2010-0397). Other notes in the files suggest that some IHOs may still assume that they have 10 days to issue an HOD post-hearing, regardless of

circumstances.  One file contains an email in which an IHO states that "[t]he terminal date of the hearing triggers the HOD due date."  (Case No. 0278; *see also* Case Nos. 2010-0357, 2010-0669.)  The IHOs will need ongoing training in this area in order to ensure that decisions are not unnecessarily delayed for their convenience.

### 4. Inappropriate attribution of continuances.

In February plaintiffs found that in some cases evidence in the file showed that the reason identified in a motion or an order for a continuance was not the actual reason for the continuance.  In this review Plaintiffs found that motions and orders were largely supported by the record.  It did not appear that hearing officers were regularly attributing continuances to the wrong parties.  In at least one case the reasons listed on the motion and the order were not completely consistent, but did not directly contradict each other.  Additional detail in the documentation might have clarified the reasons for the attribution.

   a. The parties filed a consent motion for a continuance, listing as the reasons that the school had not been able to retain counsel before the resolution session, and that the school's counsel was unavailable on the scheduled hearing date.  In the order the Hearing Officer acknowledged the unavailability of LEA counsel, yet also checked boxes noting that the parent and/or her representative was unavailable and that the parent and/or her representative failed to attend the resolution session.  (Case No. 2010-0521.)

### 5. Continuances without written motions.

In February plaintiffs identified 30 case files missing written motions for continuances, or almost one quarter of the cases reviewed.  This lack of documentation violates the SOPs, and makes it impossible to determine whether orders attributed continuances to the parties who actually requested them and whether hearing officers granted continuances for the length of time

requested by the movant. In this review plaintiffs found only one case without a written continuance motion in the file. (Case No. 2010-0652.)

### 6. Continuances without written orders.

Similarly, 21 cases plaintiffs reviewed in February were granted without written orders, in violation of the Consent Decree. When there is no written order it is impossible to determine whether the standards for granting continuances have been met and what the factual bases for the continuances were. No case reviewed by plaintiffs for this report lacked the required written orders granting or denying requested continuances.

### 7. Continuances without CHO review.

In February plaintiffs found 16 cases where CHO review was required by the Consent Decree, but where there was no indication in the file that the CHO had reviewed the case. In at least one case reviewed for this report, CHO review of a continuance motion occurred several weeks after issuance of the HOD resolving the case (Case No. 2010-0775); however no case was missing evidence of required CHO review.

### 8. Multiple continuances and length of continuances.

The Consent Decree places special restrictions on lengthy continuances, or on second or third continuances in the same case, because of the potential for undue delay of special education services to prevailing students and parents.

In February, plaintiffs noted that 44 cases had multiple continuances. In this review, only three of the 45 continuance cases had more than one continuance. In February 91 cases, or about two thirds, had continuances longer than 10 days. In this review only 24 continuances, or about half, were for longer than 10 days. This reduction in the length and number of continuances permits prevailing families to receive needed services more quickly.

### III. OTHER ISSUES AFFECTING TIMELINESS OF ADJUDICATIONS.

    **1. Time allotted to hearings.**

In February plaintiffs found that in at least 12 cases, a continuance had to be requested because the IHO had not attempted to estimate the amount of time that would be necessary for the due process hearing. In this review plaintiffs found that IHOs were working with the parties to better estimate in advance the duration of hearings, reducing the need for continuances. In some cases hearing officers scheduled more time than was initially requested for the hearing, though in a few instances even that time was insufficient. Plaintiffs found only one case untimely because the IHO's failure to effectively work with the parties to accurately estimate the time needed for hearing resulted in the need for a continuance that doubled the time for issuance of the HOD.

    a. Petitioner requested two days for the complex hearing. The IHO granted two days and also placed a third day on the calendar in case additional time was necessary. After the second day, the parties needed more time but were no longer available on the provisional third date, so two more dates were added to the calendar. The parties jointly requested a twelve day continuance to include the two new dates and an opportunity to submit closing arguments. Plaintiffs found this case timely. (Case No. 2010-0232.)

    b. Petitioner did not make a time request, and the IHO scheduled a full day of hearing, At the end of that day, plaintiff requested a nine-day continuance, so that another hearing date could be scheduled. Plaintiffs found this case timely. (Case No. 2010-0288.)

    c. Petitioner requested "more than two hours," but did not specify an amount in the complaint. The parties and the IHO then discussed the amount of time that would be

necessary for the complex hearing, which had been consolidated with that of a sibling. The IHO proposed 2.5 days for the hearing, but after the second day the parties determined they could not complete the hearing in that time and requested a 45-day continuance for scheduling additional hearing dates. Because of the extraordinary delay caused by the failure to estimate hearing time, plaintiffs found this case untimely. (Case No. 2010-0257.)

**2. Resolution Period Timelines.**

In both of their prior reports, Plaintiffs found significant problems in identifying the correct timelines for adjudication. Defendants must hold a hearing and issue a decision within 45 days after the end of the resolution period; the resolution period runs for 30 days after the complaint is filed, but may be shortened if parent and school agree in writing to waive it or if, before the end of the 30 days, the parties state in writing that they cannot reach an agreement. In the past the SHO often did not correctly identify the beginning of the 45-day timeline, allotting 30 days for resolution regardless of whether there was waiver or an earlier agreement to end resolution efforts. In other cases the SHO identified the date on which the SHO received notice of the waiver as ending the resolution period, and not the date by which both parties executed the waiver. In too many cases the SHO had no record of whether the parties had waived the period or held a resolution session. As a result, it was impossible to determine whether the 30-day resolution period should run in its entirety or should be truncated.

In this review plaintiffs found that IHOs took a more aggressive approach to gathering information about resolution sessions, and to accurately setting the start dates of the 45-day timelines. Prehearing orders tended to note the status of the resolution period and notices from the IHOs requested that the parties inform them of any resolutions or changes in the timelines. Fifty-seven case files included formal disposition forms identifying the date on which a

resolution session was held and noting the outcome. IHOs who received these forms from the parties were then able to modify the case timeline on the basis of the information that the parties provided. In other files the appropriate start date for the 45-day timeline could be ascertained from prehearing orders or email in the docket. (Several other cases were dismissed or settled during or shortly after the 30-day resolution period.)

Although notable progress has been made, the SHO's system for docketing resolution sessions to permit accurate computation of the 45-day timeline is still a work in progress. The timeline was not accurately computed in every case. Plaintiffs find the following six cases untimely due to inaccurate computation of the hearing timeline:

a. In one case the parties held a resolution session on June 10, 2010, nine days before the default expiration of the 30-day resolution period, at which they agreed to end resolution efforts and proceed to hearing. Neither the SHO or IHO adjusted the HOD due date to reflect early termination of the resolution period, however, and instead the IHO and parties began the 45-day timeline on the 31st day after the complaint was filed. As a result this case was untimely. (Case No. 2010-0593.)

b. In another case neither the hard file nor the electronic docket contained information indicating whether a resolution session took place. Again, the IHO began the 45-day timeline on the 31st day after the complaint was filed, apparently without determining whether the parties had waived the resolution session, or whether the session took place before the 30th day and truncated the resolution period. (Case No. 2010-0414.)

c. In another case, the complaint was filed on March 15, 2010, and the file contains a "Due Process Complaint Disposition" form dated March 25, 2010 indicating that the parties agreed to end resolution efforts and proceed to hearing. The form was signed

11

by the LEA representative and indicates that the parent participated by phone and that the parent's attorney, who was present at the session, indicated the parent's consent to end the resolution period.  The IHO ruled that without the parent's signature the form did not operate to end the resolution period and apparently required the parties to accept a later end to the resolution period than they had intended.  The parent later had to seek a continuance in order to schedule the hearing on dates when her attorney was available.  Plaintiffs disagree that where there is a written form advising the SHO that the parties want to proceed to hearing, a petitioner participating by phone but represented by counsel must sign the document in order to demonstrate agreement.  This was the only case in the sample in which the parent's signature was required to indicate agreement that the resolution period should end.  (Case No. 2010-0278.)

d. In another case the complaint was filed on April 1, 2010, and a resolution session took place on April 22 at which the parties apparently agreed to end resolution efforts and prepare for hearing.  An email in the electronic docket notified the IHO that the session took place, but the IHO did not take this into account in calculating the beginning of the 45-day time period.  The IHO later granted the petitioner's motion for a 33-day continuance because of a witness's unavailability.  The HOD resolving the case was issued on July 15, 2010, at least six days after it would have been due if the beginning of the 45-day period had been properly calculated – and perhaps several weeks later than it could have been issued, had the accurate calculation of the timeline obviated the need for the 33-day continuance.  (Case No. 2010-0360.)

e. After the petitioner filed an amended complaint on July 26, 2010, the hearing officer issued a "Notice of Reset," indicating the new timeline for resolution of the

complaint. The parties ended the resolution period by written agreement dated August 13, but the electronic docket recorded the end of the 45-day period as October 7, not September 27. The HOD resolving the case was issued October 4, seven days late. (Case No. 2010-0652.)

f.  In yet another case the complaint was filed on June 22; the petitioner waived the resolution period on July 1; and the LEA waived resolution on July 7. The SHO and IHO appear to have calculated the first day of the 45-day period as July 22, instead of July 8, the day after both parties agreed in writing to waive the resolution period. The HOD was issued on September 4, approximately 14 days late. (Case No. 2010-0764.)

## IV. ADDITIONAL SHO OPERATIONAL ISSUES.

### 1. Adherence to SOPs.

In February plaintiffs noted that in at least 19 cases the IHOs and CHO did not decide a motion for a continuance within five days, as required by the SOPs. In this review plaintiffs noted at least seven cases in which the continuance motion was not timely decided.

### 2. Recordkeeping.

Files at the SHO were largely in disarray when plaintiffs reviewed files in February. The documentation available in the hard file and the docket was not congruent, and the organization of documents in each was unpredictable and inconsistent. Motions and orders were often missing, and correspondence was only intermittently included. The lack of organization and consistency made reviewing SHO files far more difficult than it should be.

In this review there was significant congruence between the hard files and the electronic docket: 75 of the 86 hard files reviewed by plaintiffs were congruent with their docket files.

Written orders and motions were consistently stored in both systems, and were generally easy to find within files.

Some problems with recordkeeping remained. A number of complaints faxed after 4:00 p.m. were date stamped and uploaded by the SHO staff on the following day, though the office is open until 5:00 p.m. and under the SOPs should accept filings until that time. The IHOs' use of the "I-Sight" email system to record their communications with the parties as a supplement to the record was not consistent: some IHOs used the email system extensively (and the emails were helpful in clarifying what happened between the parties), but others seemed to have communicated with the parties either by phone or using another email address, as there was little record of email communication. Additionally, the electronic docket does not always contain accurate, or any, information about when key events, such as resolution sessions, take place; reviewers must sort through orders, emails, or hard copies of communications between the parties and the IHO to determine the case chronology.

Continued attention to timely uploading documents to the electronic docket, and more consistent use of the SHO's electronic docket and email system, would improve the efficiency of the office. Plaintiffs expect defendants' cooperation during the pendency of the Decree to ensure that effective recordkeeping systems are in place.

## V. PLAINTIFFS' TIMELINESS CALCULATIONS.

Based on their review of 85 cases processed by the SHO in April-July 2010, plaintiffs have determined that 77, or approximately 90.59 per cent, were timely adjudicated. Plaintiffs determined that the following eight cases were untimely adjudicated:  2010-0202, 2010-0257, 2010-0278, 2010-0360, 2010-0414, 2010-0593, 2010-0652, 2010-0746.  A complete list of cases reviewed by plaintiffs is attached as Exhibit A.

Respectfully submitted,

/s/  Lewis Bossing
_____
IRA A. BURNIM (Bar No. 406154)
LEWIS BOSSING (Bar No. 984609)
BAZELON CENTER FOR MENTAL HEALTH LAW
1101 15th Street NW, Suite 1212
Washington, DC  20005
Tel:  (202) 467-5730 x116
Fax:  (202) 223-0409
Email:  lewisb@bazelon.org

ATTORNEYS FOR PLAINTIFF CLASS