UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

MIKEISHA BLACKMAN, et al.,  )
　　　　　　　　　　　　　　　　）
　　　　Plaintiffs,　　　　　　　）
　　　　　　　　　　　　　　　　）
　　　　v.　　　　　　　　　　　）　　Civil Action No. 97-1629 (PLF)
　　　　　　　　　　　　　　　　）　　Claim of LaShawn Smith,
DISTRICT OF COLUMBIA, et al.,　）　　　parent and next friend of A.J.
　　　　　　　　　　　　　　　　）
　　　　Defendants.　　　　　　 ）
　　　　　　　　　　　　　　　　）

---

OPINION AND ORDER

　　　　This action was filed under 42 U.S.C. § 1983 to enforce the rights of the plaintiff class members under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 et seq., and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 et seq. Now before the Court are motions of class member LaShawn Smith for attorneys' fees and costs totaling $504,492.61. Defendant, the District of Columbia, opposes the motions. Upon consideration of the parties' papers, the relevant legal authorities, and pertinent portions of the record in this case, the Court will grant plaintiff's motion in part and deny it in part, and will award attorneys' fees in the amount of $321,355.14.[1]

---

[1] The papers considered in connection with the pending motions include: plaintiff's motion for attorneys' fees and costs ("Fee Mot.") [Dkt. No. 2407]; plaintiff's supplemental motion for attorneys' fees and costs ("Supp. Fee Mot.") [Dkt. No. 2433]; defendant's opposition to plaintiff's motions ("Fee Opp.") [Dkt. No. 2445]; plaintiff's reply in support of her fee motion ("Fee Reply") [Dkt. No. 2460]; plaintiff's motion for preliminary injunction ("PI Mot.") [Dkt. No. 2342]; defendant's opposition to plaintiff's motion for preliminary injunction ("PI Opp.") [Dkt. No. 2344]; plaintiff's reply in support of her motion for preliminary injunction ("PI Reply") [Dkt. No. 2345]; plaintiff's motion for temporary restraining order ("TRO Mot.") [Dkt. No. 2348]; defendant's opposition to plaintiff's motion for temporary restraining order ("District's TRO Opp.") [Dkt. No. 2353]; Cesar Chavez Public Charter School's opposition to

I.  BACKGROUND

Plaintiff LaShawn Smith is the parent and next friend of A.J., an eleven-year-old student eligible to receive special education and related services from the District of Columbia Public Schools ("DCPS"). At the beginning of the 2012-2013 school year, A.J. was enrolled at Cesar Chavez Public Charter School ("Chavez"), a public charter school that had designated DCPS as its local educational agency under the IDEA. R&R at 2. After Chavez expelled A.J. on April 17, 2013, plaintiff filed a due process complaint on April 18, 2013, and A.J. resumed attending Chavez under 20 U.S.C. § 1415(j)'s "stay-put" provision. Id. at 2-3. After A.J. was expelled again on April 30, 2013, plaintiff sought an interim placement at another school pending resolution of plaintiff's due process claim. Id. at 3. On May 31, 2013, an administrative hearing officer issued a hearing officer determination ("HOD") directing DCPS/Chavez to return A.J. to Chavez within five school days and to implement the services necessary to address A.J.'s disabilities within fifteen school days. Id. A second hearing was held on June 19, 2013, to address issues remaining from the April 18 complaint. Id. at 4. On July 3, 2013, the hearing officer issued another HOD ordering DCPS/Chavez to provide and fund – as compensatory education for the denial of a free appropriate public education to A.J. – 36 hours of independent tutoring and 36 hours of independent counseling. Id. at 5.

---

plaintiff's motion for temporary restraining order ("Chavez's TRO Opp.") [Dkt. No. 2355]; plaintiff's reply in support of her motion for temporary restraining order ("TRO Reply") [Dkt. No. 2357]; the August 23, 2013 Order granting in part and denying in part plaintiff's motion for temporary restraining order, which the Court converted to a motion for preliminary injunction ("Aug. 23, 2013 Order") [Dkt. No. 2361]; the Report and Recommendations of the Special Master on plaintiff's motion for preliminary injunction ("R&R") [Dkt. No. 2415]; the January 31, 2014 Order adopting the Report and Recommendations of the Special Master ("Jan. 31, 2014 Order") [Dkt. No. 2427]; the ADR Agreement between the District of Columbia and the plaintiff class dated May 9, 2013; and the transcript of the motions hearing held on August 22, 2013 ("Aug. 22, 2013 Tr.") [Dkt. No. 2439].

When DCPS did not secure a place for A.J. at Chavez for the 2013-2014 school year by August 7, 2013, plaintiff moved for a preliminary injunction. R&R at 6. In her motion, plaintiff sought "(1) an order that A.J. be allowed to attend Chavez for the 2013-2014 school year, (2) an order that DCPS and Chavez fund the [Functional Behavioral Analysis] FBA and compensatory education hours ordered by the July 3 HOD, and (3) an order that Chavez hold an IEP meeting prior to the first day of school, to discuss, *inter alia*, how the 20 hours of interim services authorized by DCPS will be used, in compliance with the Jones ADR agreement." Id. In reply, the District argued, *inter alia*, that DCPS "had no authority to force Chavez to accept A.J. as a returning student" because Chavez is a charter school. Id.

The Court referred the preliminary injunction motion to Special Master Elise Baach. See Minute Order dated August 7, 2013. The parties presented their arguments to the Special Master on August 12, 2013. R&R at 6. The Special Master concluded that the motion required further briefing from the parties, which could not be prepared, submitted and reviewed in time for a decision from the Court before the start of the 2013-2014 school year. Id. at 6-7. In the interim, A.J. and DCPS, through its General Counsel's Office, agreed that A.J. was to return to Chavez beginning on August 26, 2013, the first day of school; but Chavez refused to accept A.J. as a returning student. Id. at 7. Plaintiff then filed a motion before this Court for a temporary restraining order ("TRO"), which sought an order that DCPS and Chavez implement the May 31 and July 3 HODs. Id. DCPS and Chavez filed separate oppositions and plaintiff filed a reply; a hearing was convened before the Court on August 22, 2013. Id. At the hearing, the Court converted the TRO motion into a motion for preliminary injunction with respect to A.J.'s placement at Chavez, found that the District's position was meritless, and ordered DCPS/Chavez to re-enroll A.J. at Chavez by August 26, 2013, the first day of school.

3

See Aug. 23, 2013 Order at 2. The Court also noted the importance of the case, observing that the matter "ha[d] implications for all the charter schools in the District of Columbia[.]" Aug. 22, 2013 Tr. at 4.[2]

On August 26, 2013, the parties presented their arguments to the Special Master who ultimately recommended that the request for injunctive relief be granted. See R&R at 8, 14. The Court subsequently approved the Special Master's Report and Recommendations and granted the motion for preliminary injunction. See Jan. 31, 2014 Order.[3]

Plaintiff now moves for an award of $501,812.00 in attorneys' fees and $2,680.61 in costs for the time and effort involved in obtaining injunctive relief and implementation of the HODs.

## II. LEGAL STANDARD

Under the IDEA, plaintiffs are entitled to reimbursement of "reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the parent of a child with a disability." See 20 U.S.C. § 1415(i)(3)(B); see also Blackman v. District of Columbia, 633 F.3d 1088, 1089 (D.C. Cir. 2011). When determining the award of attorneys' fees and costs in special education cases like this one, the Court must decide whether the fees sought are reasonable by calculating "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate" – the so-called "lodestar" fee. Hensley v. Eckerhart, 461 U.S. 424, 433

---

[2] The Court made clear that its ruling "[did] not resolve the plaintiff's originally filed motion for preliminary injunction, still pending before [the Special Master]," and that "a decision on that motion [would] resolve plaintiff's claim on the merits." Aug. 23, 2013 Order at 2 n.1.

[3] Specifically, the Court ordered that the defendants continue to maintain A.J.'s placement at the Cesar Chavez Public Charter School until such a time as a change in placement is made that is in accordance with the procedural protections provided for by the IDEA, and that the defendants continue to provide services to A.J. as ordered in Hearing Officer determinations dated May 31 and July 3, 2013. See Jan. 31, 2014 Order.

4

(1983).  See e.g., In re Olson, 884 F.2d 1415, 1423 n.13 (D.C. Cir. 1989); Sierra Club v. Jackson, 926 F. Supp. 2d 341, 346 (D.D.C. 2013).

A plaintiff must submit supporting documentation with the motion for attorneys' fees, providing sufficient detail so that the Court can determine "*with a high degree of certainty*" that the hours billed were actually and reasonably expended, that the hourly rate charged was reasonable in view of the attorney's reputation and level of skill and experience with respect to this type of case, and that the matter was appropriately staffed to do the work required efficiently and without duplicative billing.  In re Olson, 884 F.2d at 1423, 1428-29 (emphasis in original) (internal quotation omitted); see Hensley v. Eckerhart, 461 U.S. at 433; Covington v. District of Columbia, 57 F.3d 1101, 1107 (D.C. Cir. 1995); Blackman v. District of Columbia, 397 F. Supp. 2d 12, 14 (D.D.C. 2005).  At a minimum, a fee applicant must provide some information about the attorney's billing practices, hourly rates, and skill and experience, as well as the nature of the attorney's practice as it relates to this kind of litigation and the prevailing market rates in the community.  Rooths v. District of Columbia, 802 F. Supp. 2d 56, 60 (D.D.C. 2011); Blackman v. District of Columbia, 397 F. Supp. 2d at 14-15.

Once a plaintiff has provided such information, there is a presumption that the number of hours billed and the hourly rate are reasonable, and the burden shifts to the defendant to rebut the plaintiff's showing of reasonable hours and reasonable hourly rates for attorneys of the relevant level of skill and expertise.  See Watkins v. Vance, 328 F. Supp. 2d 23, 26 (D.D.C. 2004).  "[I]n the normal case the Government must either accede to the applicant's requested rate or provide specific contrary evidence tending to show that a lower rate would be appropriate."  Covington v. District of Columbia, 57 F.3d at 1109-10 (quoting Nat'l Ass'n of

5

Concerned Veterans v. Sec'y of Def., 675 F.2d 1319, 1326 (D.C. Cir. 1982)); see also Rooths v. District of Columbia, 802 F. Supp. 2d at 60.

III.  DISCUSSION

Plaintiff seeks fees, costs, and expenses for work done by twelve attorneys and one paralegal at the Judge David L. Bazelon Center for Mental Health Law ("Bazelon Center"), University Legal Services ("ULS"), Crowell & Moring, and Steptoe & Johnson. In support of her motion for fees, plaintiff has submitted declarations attesting to the experiences and billing practices of the attorneys and the paralegal who worked on this case. See First Declaration of Emily B. Read ("First Read Decl."), Fee Mot. Ex. 3; Declaration of Shawn R. Ullman ("Ullman Decl."), Fee Mot. Ex. 2; Declaration of Laurel Pyke Malson ("Malson Decl."), Fee Mot. Ex. 4; Declaration of Jane I. Ryan ("Ryan Decl."), Fee Mot. Ex. 5; Supplemental Declaration of Emily B. Read ("Supp. Read Decl."), Supp. Fee Mot. Ex. 2; Second Supplemental Declaration of Emily B. Read (Second Supp. Read Decl."), Fee Reply Ex. 1. Most of the declarations include or have as attachments invoices documenting the hours billed and the bill of costs. See Read Decl.; Ullman Decl.; Malson Decl.; Ryan Decl.; Supp. Read Decl.

The District opposes the fee motions on the grounds that both the hourly rates and the number of hours billed by plaintiff's counsel are unreasonably high. See Fee Opp.[4] These arguments are addressed in turn.

---

[4]  The District does not contest that plaintiff is a prevailing party. The Court therefore need not engage in the preliminary inquiry regarding whether the fee applicant is the prevailing party.

### A. The Hourly Rates Are Reduced In Part

#### 1. Bazelon Center and University Legal Services

Plaintiff seeks fees for the services of five attorneys from the Bazelon Center, which focuses primarily on the field of mental disability law, to be paid at the following rates: $510 per hour for Ira Burnim, an attorney with 36 years of legal experience, 25 years in the field of special education; $450 per hour for Lewis Bossing, an attorney with 14 years of legal experience, six years in the field of special education; $360 per hour for Emily Read, an attorney with nine years of legal experience, three years in the field of special education; $360 per hour for Julia Graff, an attorney with eight years of legal experience, three years in the field of special education; and $250 per hour for Todd Rubin, an attorney with one year of legal experience, primarily in the field of special education. Billing Entries at 3, Fee Mot. Ex. 1; see Read Decl. ¶¶ 2, 10, 11, 16, 19, 22, 26. Plaintiff also seeks fees at the rate of $450 per hour for the services of Shawn Ullman, an attorney with ULS with twelve years of experience primarily in the field of special education. Billing Entries at 3; see Ullman Decl. ¶¶ 2-8.

The hourly rates invoiced for the Bazelon Center and ULS attorneys are the equivalent of those established by the so-called Laffey Matrix. See Laffey Matrix – 2003-2014, *available at* http://www.justice.gov/usao/dc/divisions/Laffey_Matrix%202014.pdf. That schedule of attorneys' fees, first developed based on information about the prevailing rates charged by federal litigators in the District of Columbia, is maintained by the United States Attorney's Office for the District of Columbia. See id. nn.1-3. In this Circuit, the rates contained in the Laffey Matrix are typically treated as the highest rates that will be presumed to be reasonable when a court reviews a petition for statutory attorneys' fees. See Rooths v.

District of Columbia, 802 F. Supp. 2d at 61; Blackman v. District of Columbia, 59 F. Supp. 2d 37, 43 (D.D.C. 1999).

The District argues that the hourly rates for all attorneys in the case should be reduced to three-quarters of the relevant Laffey rates. Fee Opp. at 13. Many judges of this Court, including the undersigned, generally cap attorneys' fees at three-quarters of the Laffey rate for routine IDEA cases – where the claims involve "simple facts, little evidence, and no novel or complicated questions of law." Rooths v. District of Columbia, 802 F. Supp. 2d at 63; see also McAllister v. District of Columbia, — F. Supp. 2d —, 2014 WL 2921020, at *4 (D.D.C. 2014); Sykes v. District of Columbia, 870 F. Supp. 2d 86, 96 (D.D.C. 2012).[5] In complex cases such as this one, however, skilled litigators may be compensated at full Laffey rates. See Thomas v. District of Columbia, 908 F. Supp. 2d 233, 246-48 (D.D.C. 2012); Sykes v. District of Columbia, 870 F. Supp. 2d at 95; Blackman v. District of Columbia, 677 F. Supp. 2d 169, 177, 178-79 (D.D.C. 2010) (applying Laffey rates in full to complex work performed by Bazelon Center attorneys in this case), aff'd, 633 F.3d 1088 (D.C. Cir. 2011). Plaintiff has sufficiently demonstrated the attorneys' skill levels and experience with special education law, as well as the complexity of this case. The Court therefore awards full Laffey rates for the Bazelon Center and ULS attorneys.[6]

---

[5] Plaintiff urges this Court to revisit its conclusion that full Laffey rates are inappropriate for routine IDEA cases. Fee Reply at 17-18; see Eley v. Dist. of Columbia, — F. Supp. 2d —, 2013 WL 6092502, at *15-16 (D.D.C. Nov. 20, 2013) (Howell, J.) (concluding that "the complexity of the case is accounted for by the number of hours expended and should not be accounted for by a blunt reduction of rates before applying the rates to the number of hours expended") (citing Perdue v. Kenny A. ex. rel. Winn, 559 U.S. 542 (2010)). Because the Court finds that this IDEA case involves complex legal issues, it need not address this argument.

[6] It was the litigating posture of the District of Columbia that made the case more complicated than it needed to be. DCPS asserted throughout: (1) that it had no authority to enforce an HOD or court directive ordering A.J.'s return to Chavez and that DCPS counsel did

2. Crowell & Moring and Steptoe & Johnson

Plaintiff also seeks fees for the services of four attorneys and one paralegal from Crowell & Moring, to be paid at the following rates: $510 per hour for Laurel Malson, an attorney with 34 years of legal experience; $450 per hour for Jennifer Knight, an attorney with 12 years of legal experience; $295 per hour for Luke van Houwelingen, an attorney with six years of legal experience; $250 per hour for Adam Teitelbaum, an attorney with one year of legal experience; and $145 per hour for paralegal Arvind Miriyala. Billing Entries at 3; see Malson Decl. ¶¶ 3-4, 7-9, 11-12, 13-14. In addition, plaintiff seeks fees for the services of three attorneys from Steptoe & Johnson, to be paid at the following rates: $510 per hour for Jane Ryan, an attorney with 31 years of legal experience; $510 per hour for Lindsey Lang, an attorney with 31 years of legal experience; and $250 per hour for Latoya Brisbane, an attorney with three years of legal experience. Billing Entries at 3; Supplemental Billing Entries at 4-5, Supp. Fee Mot., Ex. 1; see Ryan Decl. at 1, ¶¶ 1-2; id. at 2-3, ¶¶ 1-4; id. at 4, ¶¶ 1-2.

Again, the District argues that the hourly rates in the case should be reduced to three-quarters of the relevant Laffey rates. Fee Opp. at 13. As with the Bazelon Center and ULS attorneys, the plaintiff has established both the considerable skill and experience of these

---

not represent Chavez at least at the second due process hearing, despite the fact that Chavez is a DCPS charter school and is Chavez's local educational agency; (2) that the Office of the State Superintendent, the state educational agency, through its Student Hearing Office, did not have the authority to order Chavez to readmit A.J. after his expulsion; (3) that Ms. Smith had withdrawn A.J. from Chavez and then had failed to properly reenroll A.J. at Chavez, placing him at the end of a long waiting list and jeopardizing his return to Chavez; (4) that Ms. Smith had waived the relief provided by the first HOD because she kept him at his interim alternative educational placement for the last two weeks of the 2012-2013 school year; and (5) that no change in "educational placement" had been effected for A.J. See, e.g., Aug. 22, 2013 Tr. at 50-51; First Read Decl. ¶¶ 35, 39, 41-42; Second Supp. Read Decl. ¶¶ 8, 9, 14, 16, 21-24; Malson Decl. ¶¶ 20, 24-26. Much of the extensive litigation in this case could have been avoided had DCPS simply honored its obligations under the IDEA and the Consent Decree in this case and implemented the HODs according to their terms.

attorneys as well as the complexity of the present matter. Accordingly, the Court declines to reduce the hourly rate of the Crowell & Moring and Steptoe & Johnson attorneys. See Blackman v. District of Columbia, 677 F. Supp. 2d at 173-75 (applying Laffey rates to complex work performed by Steptoe & Johnson litigators in this case).

The District further challenges the addition of the Crowell & Moring attorneys, claiming that plaintiff is improperly seeking expert costs by billing for these attorneys' hours. Fee Opp. at 19-21. While plaintiff acknowledges that the cost of retaining experts is not reimbursable in IDEA litigation, she maintains that the Crowell & Moring lawyers were retained as counsel, not as experts. See Fee Mot. at 2 n.2; Fee Reply at 8. Crowell & Moring also points out that while it did in fact retain an expert in this case, Dr. Neal Horen, it has not sought reimbursement for those expenses and absorbed the cost of his services. Fee Reply at 9. The Court has reviewed the relevant billing entries and finds nothing to indicate that the Crowell & Moring attorneys were acting as anything other than lawyers, and it therefore will reject the District's argument as meritless.

3. Fees on Fees Rates

The District also contends that the $126,651 in fees sought for preparation of the fee petitions are unreasonable and should be denied or at least awarded at no more than half the Laffey rates. Fee Opp. at 25. Unlike the litigation on the merits of this case, the Court agrees that fee litigation usually is not complex and it does not appear to have been particularly complex in this case. See Wright v. District of Columbia, 883 F. Supp. 2d 132, 135 (D.D.C. 2012) ("fee litigation is not complex and does not necessarily entail specialized expertise and experience"). Indeed, it typically involves simply calculating the number of hours spent by each lawyer involved in the matter, writing off time where appropriate because of inefficiencies, overstaffing,

or other matters involving the exercise of billing judgment, and then multiplying by the hourly rate of the relevant lawyer.

In this case, most of the time spent in the preparation of the fee petition and supplemental fee petition – 162 hours – was the time of a very senior lawyer at Steptoe & Johnson, a lawyer who billed at the highest <u>Laffey</u> rate, $510 per hour. If Steptoe was to take the laboring oar for all entities, she understandably needed to consult with at least one lawyer each from the Bazelon Center and Crowell & Moring, as well as with Mr. Ullman, the only ULS lawyer involved. There is no reason, however, why most of the work done in the preparation of the fee petitions could not have been performed by a more junior (and less expensive) attorney at Steptoe and, indeed, at each of the four entities involved. Accordingly, the Court will apply the <u>Laffey</u> rate for more junior lawyers involved in this case from the Bazelon Center, Crowell & Moring, and Steptoe, as well as Mr. Ullman's <u>Laffey</u> rate: for Bazelon Center lawyers, Emily Read's rate ($360 per hour); for Crowell lawyers, Luke van Houwelingen's rate ($295 per hour); for Steptoe lawyers, Latoya Brisbane's rate ($250 per hour), and for ULS, Shawn Ullman's rate ($450 per hour). Then, consistent with this Court's normal practice in non-complex cases, it will award fees at three-quarters of each of those hourly rates. <u>See</u>, <u>e.g.</u>, <u>Rooths v. District of Columbia</u>, 802 F. Supp. 2d at 63.

### B. The Hours Billed Are Reduced in Part

The District makes a blanket argument that plaintiff's fees should be reduced because they are excessive considering the nature of this action. To support this argument, the District provides a comparison of the fees requested here and a range of fees awarded in other IDEA administrative actions. <u>See</u> Fee Opp. at 13-17. The District's comparison, however, is not probative, as each case must be judged on its own merits. <u>See</u> <u>Hensley v. Eckerhart</u>, 461 U.S. at

11

429 (concluding that the fee amount "must be determined on the facts of each case"). While this fee request undoubtedly is much larger than the typical fee request in a routine IDEA case, the Court already has pointed out that this is not a typical IDEA case. The issues involved here were complex and time-consuming and have broad implications for all charter schools in the District of Columbia. Furthermore, as note supra at note 6, the complexity was a direct result of the District of Columbia's having failed to provide services to A.J. in part by claiming, on multiple occasions, to have no authority over Chavez, a DCPS charter school. See R&R at 6-7.[7]

In addition, most of the District's objections with respect to the number of hours are broadly based and lack specificity. See Miller v. Holzmann, 575 F. Supp. 2d 2, 22 n.33 (D.D.C. 2008) ("the party challenging an application for fees should frame its objections with specificity") (quoting Donnell v. United States, 682 F.2d 240, 250 (D.C. Cir. 1982)), vacated in part on other grounds, 786 F. Supp. 2d 110 (D.D.C. 2011). The Court will not reduce the overall award simply based on the District's general objection that the hours billed are excessive. The

---

[7] The Court finds it remarkable that after nearly seventeen years of litigation and a Consent Decree that was agreed to and approved on August 24, 2006, the District of Columbia would now take the position that DCPS has no authority over Chavez, a DCPS charter school, and maintain that the District of Columbia cannot require a DCPS charter school – or any charter school, for that matter – to accept or re-enroll a special needs student. Paragraph 23 of the Consent Decree provides that the word "schools" as used throughout the Consent Decree refers to "all schools serving District of Columbia special education students, including . . . charter schools. . . ." Consent Decree ¶ 23, Blackman v. District of Columbia, 2006 WL 2456413, at *8 (D.D.C. Aug. 24, 2006). Furthermore, in a document filed on December 14, 2007 and entitled "Statement of Defendant District of Columbia Accepting Legal Responsibility for Ensuring Timely Hearings and Timely Implementation of HOD's and SA's for Charter School Students" [Dkt. No. 2036], the District of Columbia represented to the Court that the District of Columbia "is responsible for ensuring that charter schools timely implement HODs and SAs." Id. at 2. Nevertheless, in this case, the District of Columbia maintained that if this Court were to order that A.J. be returned to Chavez, a DCPS charter school, "DCPS doesn't have any mechanism or specific authority that would allow it to make that happen." Aug. 22, 2013 Tr. at 23; see id. at 25-26, 51. The District of Columbia took the same position before the Special Master and the Hearing Officer. See R&R at 6 (defendant argued that "no matter how the HOD was read, DCPS would have no authority to force Chavez to accept A.J. as a returning student."); First Read Decl. ¶¶ 34, 39, 41; Second Supp. Read Decl. ¶¶ 9, 14, 15, 16, 21.

12

Court separately addresses the District's more specific objections to plaintiff's motion for fees in the following paragraphs.

The District argues that plaintiff improperly invoiced for Mr. van Houwelingen's attendance at a resolution session as part of a bundled entry for May 9, 2013 for 11.30 hours, asserting that Congress has expressly prohibited fees for participation in resolution sessions. Fee Opp. at 21. See 20 U.S.C. 1415(i)(3)(D)(iii). Plaintiff explains that when drafting the motion, she excluded .90 hours from the original 12.20 hours entry for the resolution session, yet inadvertently left "[p]articipate in resolution session" in the bundled description. Fee Reply at 9-10. Although the District is only able to point to one error on the invoice, the burden is on plaintiff to show accurate record keeping. Accordingly, the Court reduces the May 9 billing entry by two hours.

The District next argues that plaintiff's request for $34,982 in fees for research should be subsumed in counsel's hourly rates, asserting that compensation would result in double recovery for counsel's both purportedly having expertise in the field of special education and developing that expertise during the litigation of this case. Fee Opp. at 21-22. Plaintiff disagrees, relying in part on Harvey v. Mohammed, 951 F. Supp. 2d 47, 58-59 (D.D.C. 2013) (holding that plaintiff could be compensated for attorney hours spent acquiring expertise in complex case). See Fee Reply at 20. While the Court agrees that even an expert in the field must keep up with the law in his or her area of practice, it might well be concerned if non-experts were being compensated from public funds for "learning on the job," particularly when the Court is already awarding fees at full Laffey rates. In this case, however, the District's own untenable legal positions before the hearing officer, the Special Master, and this Court forced plaintiff's

counsel to research many novel questions of law under tight time constraints. See Second Supp. Read Decl. ¶¶ 9, 14, 16, 21-24. In these circumstances, the District's argument is rejected.

The District also challenges $35,032 in fees for implementation of the hearing officer decision ("HOD"), arguing that the Court has no legal authority to award implementation fees. Fee Opp. at 23. The District's argument – as it well knows – is inconsistent with the binding ADR agreement that it entered into with plaintiffs on May 9, 2013. That agreement expressly states that implementation fees in this case are compensable and further notes that plaintiff "may seek an award for the total amount of implementation fees from the United States District Court." ADR Agreement dated May 9, 2013 at 5-7. The Court finds the implementation fees to be reasonable and thus compensable.

Finally, the District contends that plaintiff overstaffed the case by using too many attorneys. Fee Opp. at 17. It emphasizes that plaintiff seeks $83,576.70 for lawyers participating in "excessive conferences with each other." Id. at 22-23. The District also cites several occasions where five attorneys billed for appearing at hearings and conferences on behalf of the plaintiff when it was unnecessary for all five to attend. Id. at 19. The District further argues that Mr. Burnim, Ms. Malson, Ms. Knight, Mr. Bossing, and Mr. Rubin had minimal involvement in the matter, their services consisting mainly of reviewing documents and conferring with other attorneys; thus, the billing entries for these attorneys are alleged to be excessive and unwarranted. Fee Opp. at 18. The District's point with respect to all but Mr. Rubin is well taken.[8] While some general oversight, collaboration and communication among attorneys – and supervision of more junior lawyers by those more experienced – is necessary in any complex

---

[8] Mr. Rubin played a critical role in this case with substantive and time-consuming responsibilities commensurate with what would be expected of a first or second-year associate. See Read Decl. ¶¶ 19-21.

14

case, the Court agrees with the District that the billing records here often show multiple attorneys attending hearings and conferences, multiple attorneys working on the same legal issue, and a good deal of consultation and document review by lawyers not essential to litigating the case. The Court therefore will reduce the total compensable number of hours for the merits litigation (but not the fee litigation) in this case by an additional 30%. See Copeland v. Marshall, 641 F.2d 880, 891 (D.C. Cir. 1978) (*en banc*) ("[W]here three people are present at a hearing when one would suffice, compensation should be denied for the excess time."); Smith v. District of Columbia, Civ. Action No. 02-0373 (AK), 2005 WL 914773, at *5 (reducing time entries by 50% after finding it unnecessary for three attorneys to attend a hearing).

### C. *Costs Are Not Awarded*

The District argues that all costs and expenses should be denied because plaintiff fails to present sufficient detail regarding any costs and expenses. Fee Opp. at 26. The District also notes that certain of these costs are not authorized by statute: "meal" for $18.11, "parking" for $66, long distance telephone charges for $81.55, and "delivery services" totaling $260.85. Id. See 28 U.S.C. § 1920 (permitting certain costs, such as fees for printing and copying); Arlington Cent. School Dist. Bd. of Educ. v. Murphy, 548 U.S. 291, 301 (2006) (noting that the term "costs" in IDEA cases are defined and limited by the list in 28 U.S.C. § 1920). As the plaintiff has billed for unauthorized costs and expenses and has provided little detail on potentially authorized costs, the Court cannot determine the reasonableness and necessity of the billed costs and expenses. The Court declines to award plaintiff anything for costs and expenses.

For the foregoing reasons, it is hereby

ORDERED that plaintiff's motion for attorneys' fees [Dkt. No. 2407] and her supplemental motion for attorneys' fees [Dkt. No. 2433] are GRANTED in part and DENIED in part; and it is

FURTHER ORDERED that the District of Columbia shall pay plaintiff $321,355.14 in attorneys' fees on or before September 26, 2014. If this amount is not paid on or before September 26, 2014, it will bear interest at the rate established by 28 U.S.C. § 1961 from September 26, 2014. A calculation of the fees awarded by this Order is reproduced in the Appendix.

SO ORDERED.

/s/_____
PAUL L. FRIEDMAN

DATE: August 29, 2014    United States District Court

# APPENDIX A: ATTORNEYS' FEES AWARDED

| Attorney/Paralegal | Hours Billed | Hours Accepted by the Court | Hourly Rate Billed | Hourly Rate Applied by the Court | Fees per Attorney/Paralegal |
|---|---|---|---|---|---|
| *General Litigation*: | | *-30%* | | *Full Laffey* | |
| Burnim | 4.6 | 3.2 | $510.00 | $510.00 | $1,632.00 |
| Bossing | 12.4 | 8.7 | $450.00 | $450.00 | $3,915.00 |
| Read | 229.4 | 160.6 | $360.00 | $360.00 | $57,816.00 |
| Graff | 76.2 | 53.35 | $360.00 | $360.00 | $19,206.00 |
| Rubin | 174 | 121.8 | $250.00 | $250.00 | $30,450.00 |
| Ullman | 156.8 | 109.75 | $450.00 | $450.00 | $49,387.50 |
| Malson | 29.2 | 20.45 | $510.00 | $510.00 | $10,429.50 |
| Knight | 60.3 | 42.2 | $450.00 | $450.00 | $18,990.00 |
| van Houwelingen | 191.4 | 134 | $295.00 | $295.00 | $39,530.00 |
| Teitelbaum | 153.2 | 107.25 | $250.00 | $250.00 | $26,812.50 |
| Miriyala | 27.3 | 19.1 | $145.00 | $145.00 | $2,769.50 |
| | | | | | |
| SUBTOTAL: | 1114.8 | 780.4 | | | $260,938.00 |
| | | | | | |
| *Fees on Fees Litigation:* | | | | *3/4 Laffey* | |
| Bossing | 19.9 | 19.9 | $450.00 | $270.00 | $5,373.00 |
| Read | 12.7 | 12.7 | $360.00 | $270.00 | $3,429.00 |
| Graff | 0.5 | 0.5 | $360.00 | $270.00 | $135.00 |
| Rubin | 2.75 | 2.75 | $250.00 | $187.50 | $515.63 |
| Ullman | 9.7 | 9.7 | $450.00 | $337.50 | $3,273.75 |
| Malson | 11.3 | 11.3 | $510.00 | $221.25 | $2,500.13 |
| van Houwelingen | 49.9 | 49.9 | $295.00 | $221.25 | $11,040.38 |
| Miriyala | 4.7 | 4.7 | $145.00 | $145.00 | $681.50 |
| Lang | 162.5 | 162.5 | $510.00 | $187.50 | $30,468.75 |
| Brisbane | 7.3 | 7.3 | $250.00 | $187.50 | $1,368.75 |
| Ryan | 8.7 | 8.7 | $510.00 | $187.50 | $1,631.25 |
| | | | | | |
| SUBTOTAL: | 289.95 | 289.95 | | | $60,417.14 |
| | | | | | |
| TOTAL: | 1,404.75 | 1,070.35 | | | $321,355.14 |